## CHARLES M. HILL *et al.* v. JOHN WAND.

1. NEW TRIAL—"*Thereupon*"—*Meaning.* "Thereupon the defendants filed in writing their motion for a new trial." The word "thereupon" in this sentence, which appears in the record immediately after the verdict of the jury, construed as an adverb of time, and *held* to mean, "without delay or lapse of time."

2. LANDLORD AND TENANT—*Estoppel.* A landlord who, having leased a portion of a building to H., and who informs W., occupying the balance of the building under a lease which is about to expire, that he has leased the whole building to H. from the expiration of his (W.'s) lease, with authority on the part of H. to sub-let, and advises W. to lease of H., and W. leases of H., is estopped from denying the authority of H. to sub-let to W. And the privies of said landlord taking under him by a subsequent lease are also estopped.

3. EVIDENCE—*No Cause of Action.* The evidence examined, and *held* not to establish any cause of action in favor of the plaintiff below, and that the court erred in overruling the demurrer thereto.

*Error from Shawnee District Court.*

ALL the material facts are stated in the opinion.   Judgment for plaintiff, *Wand,* at the September term, 1888.  The defendants, *Hill Bros.,* bring the case to this court.

*Johnson, Martin & Keeler,* for plaintiffs in error.
*Rossington, Smith & Dallas,* for defendant in error.

Opinion by STRANG, C.:  Action for damages.   The petition alleges that in June, 1886, John Wand was a druggist, with a stock of goods, in possession of the store rooms on lot 213 on Kansas avenue, Topeka, as the tenant of Allen Sells, owner of the Windsor hotel building, said store rooms being a part of said building; that at the same time the plaintiffs, Hill Brothers, as partners, were in possession of the Windsor hotel under a five-year lease from said Allen Sells; that the plaintiffs represented to the defendant, John Wand, that they also had a lease of the store rooms occupied by him, covering the period of the last three years of their hotel lease, and thus induced said Wand to take a lease of said store rooms of them for the period of three years, at the monthly rental of $150; that, after giving Wand said lease, the plaintiffs sold their furniture and assigned their lease of said hotel to Passmore & Wiggins; that after Passmore & Wiggins obtained possession of said hotel, they notified the defendant that their predecessors, Hill Bros., never had any lease from Sells for the store rooms occupied by him, and that he must either surrender the possession of said rooms to them, or pay them a much higher rent; that he saw Mr. Sells and learned from him that, while he thought he had leased said store room to the Hills, he had ascertained that he had only contracted to lease it to them, and had not leased it; and that said Wand, learning, as he believed, that the Hills had no lease of said store rooms, and no authority to lease the same to him, and believing that his lease from them did not protect him, as he alleges it did not, was compelled, rather than to move out, to take a lease from Pass-

more & Wiggins and pay a much larger monthly rental, to wit, the sum of $175 per month, whereby he was damaged in the sum of $25 per month for three years, or in the aggregate $900. The defendants below answered by a general denial. When the case was reached for trial and the plaintiff had introduced his evidence, the defendants demurred thereto, for the reason that it failed to establish a cause of action, which demurrer was overruled.

The first question to be discussed here is a question of practice raised by the defendant in error, who contends that there is no case here for review; that the case-made does not show that the motion for a new trial was filed in the court below within the statutory time, and that, therefore, under the decisions of this court, the case should be dismissed. Whether this contention is correct or not depends upon the construction of the word "thereupon," appearing in connection with the allegation of the filing of the motion for a new trial. The case-made recites that, "after hearing the arguments of counsel, and being duly instructed by the court, the jury, after due deliberation, returned to the court its general verdict and its special findings upon particular questions of fact stated by the defendants, which verdict and findings are in the words and figures following, to wit." Then follow the verdict and special answers, immediately at the end of which, and in close connection therewith, the following declaration appears: "Thereupon the defendants filed in writing their motion for a new trial, of which the following is a copy." Then follows a copy of the motion for new trial and the reasons therefor.

By reference to Webster's, Worcester's, and other dictionaries, we find the word "thereupon" defined as follows: "Thereupon—1st, upon that or this; 2d, on account of that; in consequence of that." In Anderson's Dictionary of Law it is thus defined: "Thereupon—without delay or lapse of time." From these authorities it will be seen that the word "thereupon" is employed to express a cause or condition, or is used as expressive of time. The record in this case shows the different stages of the trial, each succeeding the other in regu-

lar order, down to and including the return of the verdict of the jury. It then proceeds as follows: "Thereupon the defendants filed their motion in writing for a new trial." As employed here and in this connection, we do not think the word "thereupon" refers to a cause or condition precedent, but that it is used as an adverb of time, and means, in the language of Anderson's work, above referred to, "without delay or lapse of time;" and that, with the balance of the sentence which it introduces, it means that immediately upon the return of the verdict of the jury the defendants filed their motion for a new trial. With this construction upon the word "thereupon," it follows that the motion for new trial was filed in time, and the case is properly here for review.

*1. New trial— "thereupon"— meaning.*

The second contention of the plaintiffs in error is that the court erred in overruling their demurrer to the evidence of the plaintiff below. Did the evidence of the plaintiff below establish a *prima facie* case against the defendants in the trial court? If it did not, then the court erred in its ruling; otherwise the ruling of the court was correct. The proper answer to this question must determine whether or not the plaintiff below had such a lease of the store rooms occupied by him in the Windsor hotel building, from Hill Brothers, as would protect him in such occupancy. If his lease from the Hills was sufficient to protect him in his rights therein stipulated, then he had no cause of action against them under the evidence, notwithstanding the fact that, ignorant of his rights under the law, he was induced by Passmore & Wiggins to take a new lease of them for the same premises at a higher rental; and the demurrer to the evidence should have been sustained. The Hills had a proper lease of the hotel building, except the store rooms occupied at the time by Wand, from the owner, Allen Sells, for a period running three years yet from the ensuing 1st of November, 1886. Said lease also contained the following clause:

"Said Allen Sells agrees to lease said store room, or rooms, to said Horace P. Hill upon reasonable notice by said Hill, at

a monthly rent of $125 in advance, provided always that said Allen Sells can get peaceable possession of the same from the present occupant, and will connect said drug store with the hotel by a door or other opening."

Wand was in possession of said store room as tenant of Allen Sells, the owner, and his term would expire on the 1st day of November, 1886. In June, 1886, Wand and the Hills had made the connection between the drug store and hotel spoken of in the clause of the lease from Sells to the Hills, above recited, and were in some trouble about the amount to be paid by Wand to the Hills for the privilege of said opening, he wishing said passage-way kept open to enable him to sell cigars to the guests of the hotel. Pending the discussion of said difficulty and attempts to settle the same by Wand and the Hills, Allen Sells, the owner of all the property, and landlord of both Wand and the Hills, appears and advises Wand to settle the passage-way matter with the Hills. He said to Wand that he (Sells) had leased the store rooms to the Hills from the 1st of November following, and that if he (Wand) did not settle with the Hills, they would put him out at that time. Sells left Wand, and after a short time returned and told him that the Hills would settle the archway matter for $25 per month and give him a lease of the store-room from November 1 at $150 per month and the free use of the archway, and that he (Sells) would advise Wand to do that. Sells said he had leased to the Hills, and they could sub-lease to him. Wand concluded to do as Sells advised him, and settled up the archway dispute, and took a lease of the store rooms of the Hills for the remaining three years of their lease of the hotel, to wit, three years from November 1, 1886.

Afterward, sometime, the Hills sold out to Passmore & Wiggins, and assigned to them the hotel lease. Sometime after Passmore & Wiggins got possession of the hotel, they obtained from Sells a lease of the store rooms occupied by Wand. They then notified Wand to quit and surrender to them the rooms he occupied, and when Wand objected and informed them of his lease, they told him it was not valid be-

cause the Hills never had a lease of said rooms from Sells
and no authority to rent them to him.    Passmore & Wiggins,
however, offered to rent the rooms to Wand, but at a much
higher rental per month.    Wand, believing his lease not good,
finally rented of Passmore & Wiggins at a rental of $25 per
month in advance of the amount he was to pay under his lease
from the Hills.    Would the lease from the Hills to Wand for
the store rooms, under all the circumstances under which it
was made, have protected him in the possession thereof?    We
think it would.    The lease from the Hills to Wand was a
proper lease in writing for the premises occupied and to be
occupied by Wand.    The Hills actually had in writing, at the
least, an agreement on the part of Sells to lease to them the
rooms occupied by Wand for a stipulated rental, upon reason-
able notice, provided he could get peaceable possession of the
same from Wand.    The evidence shows that he either had
notice or it was waived.    The peaceable possession of the
premises was surrendered to him by Wand, and the opening
between the drug store and hotel had been made; so that all
the conditions upon which Sells was to lease the premises oc-
cupied by Wand to the Hills were executed.    At this juncture
Sells, who has agreed in writing to lease to the Hills, appears
and informs Mr. Wand that he has leased to the Hills, and
advises and, in the language of Wand, begs him to take a
lease from the Hills, saying they have authority to sub-let.    In
pursuance of Sells's advice and importunities, Wand does take
a lease from the Hills and remains in possession thereunder.
After all that had transpired, could Mr. Sells have come for-
ward and demanded and obtained possession of said rooms
from Wand during the life-time of Wand's lease from the Hills,
upon the ground that the Hills had no authority to make the
lease to Wand?    We think not.    Mr. Sells would be fully
estopped from denying the authority on the part
of the Hills to make the lease in question, and
such lease would amply protect Mr. Wand in his
rights thereunder, as against Mr. Sells.    Having told Wand
that he had leased the rooms to the Hills, that they had au-

2. Landlord
   and tenant—
   estoppel.

thority to sub-let, and thus induced Wand to lease of the Hills, he (Sells) could never be heard to say that the Hills did not have authority to make the lease to him. The law will not tolerate such conduct, and declares whoever indulges in it forever estopped from denying the authority he has affirmed to exist.

"In accordance with this case it is now a well-established principle, that where the true owner of property, for however short a time, holds out another or allows another to appear as the owner of or as having full power of disposition over the property, the same being in the latter's actual possession, and innocent third parties are thus led into dealing with such apparent owner, they will be protected. . . . Such rights do not depend upon the *actual* title or right or *authority* of the party with whom they have directly dealt, but are derived from the conduct of the real owner, which precludes him from disputing against them the existence of the title or right or *power* which he caused or allowed to appear to be vested in the party making the sale." (Bigelow, Estop. 560.)

"Where the owner of property confers upon another an apparent title to *or power of disposition over it*, he is estopped from asserting his title as against an innocent third party, who has dealt with the apparent owner in reference thereto without knowledge of the claims of the true owner. The rights of such third party do not depend upon the actual title or authority of the one with whom he dealt, but upon the act of the owner, which *precludes* him from disputing the title or *authority* he has apparently conferred." (*McNeil v. National Bank*, 46 N. Y. 325.)

These two authorities which are so near alike, the one from Bigelow on Estoppel and the other from a decided case in the New York courts, seem to be in point in this case. These authorities hold, that where the owner of property holds out another as having power of disposition or authority over the same for any purpose, he is estopped from denying the existence of such power of disposition or authority over the property as against the rights of a person who has innocently dealt with him who is thus given such apparent power of disposition or authority. Allen Sells not only told Wand that he had leased the store rooms to the Hills, but told him they had

power to sub-let, and "begged" Wand to take a lease of the Hills. In this he not only held the Hills out to Wand as having full power of disposition of the rooms by lease, but advised Wand to take a lease from the Hills under the power of disposition he declared they possessed. Wand dealt with the Hills, believing, from the representations of Sells, that they had full power of disposition over the rooms he desired. Can it be that Sells could afterwards be heard to deny, as against Wand, that the Hills had full power of disposition over the store rooms leased by him from them? We think not. If he could not deny the existence of such power in the Hills by word, could he, by any act of his, destroy, set aside or annul the apparent power of disposition over said rooms existing in the Hills? Again we say no. "The rights of such third party do not depend upon the *actual authority* of the one with whom he dealt, but upon the *act* of the *owner*, which precludes him from disputing the authority he has apparently conferred." (46 N. Y. 325, *supra*.) So, in this case, the rights of Wand, under the lease from the Hills, did not depend upon any *actual authority* or *power of disposition* over the rooms leased in the Hills, but upon the *apparent · power* of *disposition thereof* conferred upon them by Sells, *holding them out to Wand* as *rightfully possessed of such power*. That is, it mattered not, so far as Wand's rights under his lease from the Hills were concerned, whether the Hills had a lease from Sells or not; after Sells had represented them to Wand as having one, with power to sub-let, he could not deny that they did have one containing such authority. This being true, a subsequent lease from Sells to Passmore & Wiggins conferred upon them no greater rights as against Wand than Sells had, and no more power to deny the authority of the Hills to make the lease to Wand than Sells himself possessed. The Hills did not at any time dispute their power to lease to Wand, but all the time affirmed that their lease to Wand was a good one, and that it fully protected him in the enjoyment of his rights stipulated therein. As neither Sells, nor Passmore & Wiggins, could dispute the validity of Wand's lease from the Hills, we take it that such

lease would have protected him in the enjoyment of the rights in said lease stipulated against all the world. *Anderson v. Armstead,* 69 Ill. 452, holds with the two authorities above cited, and says the third party will be protected.

"If one whose name is signed by another to a deed so far acknowledges the deed as to induce third persons to act on it as his, he may, without evidence in writing of an estoppel, be held precluded from subsequently denying the deed." (*Goodell v. Bates,* 14 R. I. 65.)

"Where the owner or the person having an interest in property represents another as the owner, or permits him to appear as such, or as having authority over it, he will be estopped, to deny such ownership or authority against persons who, relying on his representations or silence, have purchased or acquired interests in the property." (7 Am. & Eng. Encyc. of Law, 18.)

"Privies are bound by or may take advantage of an estoppel *in pais*." (*E. A. Rld. Co. v. T. & C. R. Rld. Co.,* 78 Ala. 274; *Karnes v. Wingate,* 94 Ind. 594; *Timon v. Whitehead,* 58 Tex. 290; *Wood v. Seely,* 32 N. Y. 105.)

"Where a person is estopped, his creditors attaching the property in question are estopped also." (*Parker v. Crittenden,* 37 Conn. 148.)

A point is made that the special findings of fact are not sustained by the evidence, but that the jury in making them ignored all the evidence in the case relating to the questions to which their findings are answers. The findings are not only not supported by any evidence, but are directly against all the evidence relating thereto. With our view of the law of this case, this is all we care to say about the findings. We think the lease from the Hills to Wand protected Wand in the enjoyment of all the rights he stipulated for therein. It follows, then, that if Wand, having a lease that would protect him in his rights, allowed Passmore & Wiggins, or anyone else except the Hills, to persuade him to take a subsequent lease at a higher rental, that the Hills were not to blame, and having done so and paid a higher rental, he had no cause of action against the Hills therefor, and the demurrer to the evidence should have been sustained.

3. Evidence—no cause of action.

It is recommended that the judgment of the district court be reversed, and the case remanded for new trial.

By the Court: It is so ordered.

All the Justices concurring.