**DECKER v TOLEDO (city) et**

Ohio Appeals, 6th Dist, Lucas Co

Decided April 5, 1937

Deeds & Cole, Toledo, and Julius Jacobs, Toledo, for appellant.

Martin S. Dodd, Director of Law, Toledo, and J. H. Nathanson, Toledo, for appellees.

## OPINION

By CARPENTER, J.

This cause is before this court on an appeal on questions of law and fact. It is a suit to enjoin the city of Toledo and its officers from carrying out its action of annexing to the city a section of territory adjacent to it to the northeast and known as Point Place. The plaintiff brings this action as a freeholder, elector and resident of the Point Place territory.

From the stipulation of facts, it appears that a petition for annexation was filed with the Board of County Commisisoners as provided for in §§3548 and 3549, GC. The petition being approved by that board. it, with the other papers in the matter, was filed with the clerk of the council of the city on February 24, 1934. No question is raised as to the regularity of the proceedings to this point.

On April 18, 1934, the clerk presented the papers to the Public Improvements Committee of the council, and on May 7, 1934, they were presented to the council, that being the first regular meeting of that body after the expiration of sixty days from their presentation to the clerk, as contemplated by §3550, GC.

The matter was referred to various committees and officers of the city for information and investigation, and on December 2, 1935, on its third reading, an ordinance approving the annexation was lost for lack of the two-thirds vote required by the charter of the city. At the next regular meeting of council, December 16, 1935, a motion to reconsider the former action was adopted and the matter was referred to the newly elected council, which on January 6, 1936, referred it to a committee. Subsequently, various other references were made and on May 11, 1936, an amended conditional annexation ordinance was passed. That ordinance provided for the apportionment of the indebtedness of the territory between the township of which it was a part and the city, and other tax details, and further provided that the annexation should be complete for all other purposes commencing January 1. 1937.

On December 30, 1936 the final ordinance of annexation was passed with an emergency clause. The next day, December 31st, plaintiff filed this suit in the Court of Common Pleas.

On December 14, 1936, a petition attempting to invoke the proceedings provided for in §3526 GC, et seq., was presented to the clerk of the township trustees of Washington township asking that precincts 1 and 13 of that township, the same being part of the annexed territory, be organized as a village. No action was taken by the township trustees on this petition.

I. Among other things, it is urged by plaintiff that the action of ■■■■■ ■ the city is invalid because it prevents the election authorized in §3526, GC, to organize these precincts into a village.

This proceeding has one fatal infirmity which disposes of this contention. §3526, GC, says such a petition shall be presented "to the trustees of the township," and this may be done "at a regular or special meeting of the township trustees."

The record shows this petition "was presented to the clerk of the township trustees," and it does not appear that it has ever been presented to the trustees. Without such proper presentation, it could not have the force claimed for it.

II. Much evidence has been offered to prove that the annexation in question will place an added financial burden upon the city, and that it will not be ■■■■■ ■ able to furnish the usual city services in the way of schools, police, fire and sanitary protection in the annexed territory. This phase of the matter raises a question of policy or expediency which we must assume had consideration by the majority of the freeholders of the territory who presented the initial petition to the county commissioners. The fact that that body approved the petition indicates that as to it, it seemed "right that the prayer of the petition be granted."

For the city, its council had the matter under consideration for a long time, and from the various references to committees and officers, it appears that the policy and expediency of its action was fully considered. With this showing of consideration on the part of those in interest and authority, the court can not substitute its judgment on such matter of policy for that of the authorities in interest that have so considered and decided the matter. Nor can the court say, from an examination of the record, that the council abused its discretion in the action it took. This is especially true in view of the time the question is raised by plaintiff. From the terms of §3553, GC, it would seem that this issue could and should be raised within the sixty-day period the law requires the matter to remain in abeyance after the commissioners have acted upon the proposal

and filed the proceedings with the officer of the municipality.

III. That the full sixty days did not elapse from the time the matter was first filed with the clerk of council, February 24, 1934, to the time it was presented to .the council, April 18, 1934, or fifty-three days, is claimed as a fatal defect. However, the record shows the presentation upon April 18th was not to the council, but to a committee of that body, and that council did not receive it until May 7, 1934, which was in strict accord with the statute.

IV. Sec 3550, GC, after providing for the filing of papers with the council by its clerk after the sixty-day period, then says: **"Thereupon** the council by resolution or ordinance shall accept or reject the application for annexation." (Emphasis ours).

It is urged that the word "thereupon" means "immediately after," "at once," "without delay," and that the delay from April 18, 1934 to December 30, 1936, is so long a time that the council lost jurisdiction over the matter and for that reason its final action on the latter date is invalid.

Certainly the Legislature did not intend that a council must at once determine such an important matter affecting as this does a population of 5,000 people. As used here, the word "thereupon" more nearly means "thereafter," that is, that the council may act within a reasonable time after that time, but not before it.

V. The claim most seriously pressed by plaintiff is that when the annexation ordinance was rejected on vote of council, December 2, 1935, "no further proceedings" could be had in the matter, and the action of council on December 16, 1935 on the motion to reconsider, could not retain jurisdiction over the matter for any further action.

This claim is based on §3551, GC, which is as follows:

"If the resolution or ordinance rejects the application, no further proceedings shall be had, but such rejection shall not be a bar to application thereafter to the county commissioners on the same subject."

This case does not quite fit the exact language of this section. The ordinance in question was one to approve the application to annex, not to reject it. What happened was that the approval ordinance failed of passage for lack of a two-thirds majority.

But if we treat the failure of passage of the approval ordinance as a rejection of the application, could the council by motion to reconsider, retain its jurisdiction of the matter?

The council had a rule on the subject of reconsideration, which was as follows:

"Rule XVIII. When a vote has been taken it shall be in order for any member voting on the side which prevails, to move a reconsideration thereof at the time or at the next meeting of council, unless in the meantime the matter under consideration shall have become a law."

The court in **State ex v Board of Public Service of Columbus**, 81 Oh St 218, 90 NE 389, at page 224, expressed the recognized rule on this subject:

"That rule, well settled by numerous adjudications, is to the effect that the action of such bodies respecting legislative or administrative matters is not always conclusive and beyond recall, but that they are possessed of inherent power to reconsider their action in matters of that nature, and adopt if need be the opposite course in all cases where no vested right of others has intervened, the power to thus act being a continuing power."

But it is said this matter had "become a law." What was the law that came into existence by the former vote? That vote did not change the status quo. No rights were changed or new or different rights vested thereby.

This measure was no different than any ordinance or resolution which would, if passed and put into effect, change status. When on vote it fails of passage, no law is made thereby. As stated by the Supreme Court, the power to reconsider is a continuing one, in the contemplation of the usual parliamentary procedure, and no legislative action such as this is fully and finally disposed of until there has been a vote to reconsider, or the time has passed for such motion.

Finding that none of the claims of the plaintiff that the Point Place annexation proceedings are invalid can be sustained, his petition is dismissed at his cost.

Petition dismissed.

LLOYD and OVERMYER, JJ, concur.