No. 33,542

JOHN ALSTER et al., *Appellees*, v. JOSEPH L. ALLEN, doing business as THE CLOVERLEAF DAIRY, *Appellant*.

(77 P. 2d 960)

Opinion filed April 9, 1938.

*A. Harry Crane, Ward D. Martin,* both of Topeka, and *C. D. Holman,* of Leavenworth, for the appellant.

*Lucien B. Rutherford,* of Leavenworth, for the appellees.

The opinion of the court was delivered by

HUTCHISON, J.: This is an appeal from a finding and judgment for contempt for the violation of an injunction order issued in an action brought in Leavenworth county by several parties living near a dairy, against the defendant, Joseph L. Allen, doing business as the Cloverleaf Dairy, in which they complained of the way and manner in which the creamery was operated in that it caused serious vibrations, loud noises, and offensive odors, which were much to the annoyance, inconvenience, discomfort and health of the neighbors.

The original action for injunction was tried before the district judge without a jury, and an injunction was granted by the district court on July 24, 1934, enjoining and restraining this defendant from continuing the objectionable features complained of. In the journal entry of such judgment the following language was used as to the injunction:

"It is therefore now by the court here considered, ordered, adjudged and decreed that the said defendant herein, its successors, grantees or assigns, be and they are hereby enjoined and restrained from operating or running said Diesel engine or any other engine or machinery causing such vibrations as will

jar, shake or otherwise disturb or put to great inconvenience, annoyance or damage the property or peaceable enjoyment thereof by said plaintiffs.

"From loading or unloading milk cans and operating trucks or other vehicles in and upon said premises so as to cause loud and violent noises sufficient to disturb the peace and quiet of said plaintiffs.

"From operating said plant in such a manner as to cause disagreeable, obnoxious, dangerous or unhealthy fumes and smoke or gases to permeate the houses of said plaintiffs to their discomfort, annoyance and inconvenience, and that said plaintiffs recover their costs herein expended and that execution issue therefor; to all of which orders, judgments, and decrees the above-named defendant duly objects and excepts."

An appeal was taken from the order and judgment of the trial court to this court and the judgment was affirmed by this court on April 6, 1935, the decision being reported in 141 Kan. 661, 43 P. 2d 969. The mandate was duly sent to the district court and made of record there.

On April 16, 1936, an affidavit was filed in the district court of Leavenworth county charging the defendant with contempt for the violation of the injunction order, and on the same day there was filed a verified accusation against the defendant for contempt by reason of his violation of the orders made in the permanent injunction granted on July 24, 1934.

Thereafter the defendant filed a motion to make the accusation more definite and certain by stating how and in what manner the plaintiffs were annoyed, and by setting out the definite dates and times when the plaintiffs claim they suffered by reason of the operation of the dairy in violation of the injunction order. The motion was sustained by the trial court as to the matter of times and dates, and overruled as to other matters. Thereafter on June 6, 1936, the plaintiffs requested leave of the court to amend their accusation in contempt by striking out the words "which said times and dates are too numerous to mention," and by substituting therefor by interlineation the words "the exact times and dates of which plaintiffs are unable to state." The substance of the accusation is as follows:

". . . since said mandate was duly spread upon the records of this court the said defendant has continued on divers days and times and up to the filing of this accusation, the exact times and dates of which plaintiffs are unable to state, violated the terms and conditions of said injunction, and has operated a Diesel engine or machinery in his plant which has caused such vibrations as to jar, shake and disturb the above plaintiffs greatly to their annoyance; has loaded and unloaded milk cans and operated trucks or other vehicles on said premises so as to cause loud and violent noises sufficient to disturb the peace

and quiet of said plaintiffs; has operated such plant in such manner as to cause disagreeable, obnoxious, dangerous and unhealthy fumes, smoke or gases to permeate the homes of said plaintiffs to their discomfort, annoyance and inconvenience.

"That all of said things have been done by said plaintiff contrary to the provisions of said injunction and in violation thereof and in contempt of the judgment of this court."

The defendant filed a motion to dismiss the accusation and also a demurrer thereto, both of which were overruled. The defendant then filed an answer, which was a general denial, and also pleaded matters which were involved in the motion to dismiss and the demurrer. The answer also alleged that the defendant in the spring of 1934 removed the semi-Diesel engine which was in operation at the time of the trial as to the injunction and replaced the same and described the method and manner of mounting it in the building so as to avoid vibration and noise; that he erected a brick wall along the west line of his property in the rear thereof and between the driveway and the Alster property; that he increased the height of the smokestack about six feet; that he removed the oil-burning boiler and replaced the same with a coal-burning one; that he removed the brine mixer and ice machine and replaced them with a different machine; that these removals, changes, replacements and alterations were made at great expense and for the sole purpose of abating any nuisance or disturbance; that these changes, replacements and alterations have been successful in abating any nuisance, disturbance or annoyance and they do not cause any vibrations which jar, shake or disturb the plaintiffs; that by the erection of the wall screen the plaintiffs cannot be and are not disturbed by the loading and unloading of milk cans or the operating of trucks or other vehicles; that by increasing the height of the smokestack and the changing to a coal-burning boiler all disagreeable, obnoxious, dangerous or unhealthy fumes, smoke or gas are impossible; that the dairy now cannot and does not cause any noise or vibration which disturbs or annoys the plaintiff; that the dairy is a creamery business which bottles milk and cream, makes butter and ice cream and performs other usual and ordinary operations connected with a milk and cream business; that it is located in the city of Leavenworth and is not prohibited by any zoning ordinance; that it has at various and sundry times been inspected and approved by the state board of health and the board of health of Leavenworth county; that its business is not a nuisance per se, and there is no ordinance or statute

which makes it unlawful to operate the same where it is located; that it is a lawful and necessary business and not being a nuisance it cannot be held to constitute a nuisance in law by reason of the ordinary and usual noises and operations of a creamery; that on or about August 16, 1934, the defendant notified the plaintiffs that he had installed a new engine for the purpose of making tests and asked them to call his attention to any disturbance and he would immediately stop the engine, correct the vibration or have the engine removed; that he received no replies or complaints and he therefore purchased the new engine at a great cost and it is now impossible to get his money back; that this being an equity case for the recovery and enforcement of an injunction, the plaintiffs are required to do equity and are prohibited and estopped from now complaining that they are disturbed or annoyed; that if the plaintiffs are disturbed or annoyed by vibrations they are not caused by the operation of the machinery of the defendant, but by the operation of a certain ice plant in the city of Leavenworth; that if there are vibrations, smoke, fumes or noises by reason of the operation of the defendant's dairy, that such vibrations, smoke or noise are not sufficient to disturb or annoy persons of ordinary and normal sensibilities; that they are not unreasonable or obnoxious and that persons living in a city of the size and character of Leavenworth are not entitled to absolute peace and quiet in their homes, but must accept and tolerate such noises as are not offensive to ordinary and normal persons and are usual in the operation of lawful business enterprises in a city of similar size and character.

Evidence was introduced by both parties, including the evidence of the professor of physics from the state university of Kansas, who was appointed by the court at the request of the defendant to make a scientific investigation as to vibrations, noise, gases, fumes and smoke. He was called and used as a witness in the case by the defendant. The court requested both parties to submit findings of fact and conclusions of law, which they did, and the court thereafter made the following findings of fact and conclusions of law which were included in the journal entry of judgment:

FINDINGS OF FACT

"1. The plaintiffs, Blanche Lipscomb, Margaret McKinsey, John Alster and Sam Alster, and all of them, have on many and divers times and occasions from and after the 24th day of July, 1934, to April 16, 1936, and up to the time of this trial, been disturbed and put to great inconvenience and

annoyance in the peaceable enjoyment of their property by reason of said property being jarred and shaken from vibrations caused by the operation of the defendant Joseph L. Allen, or his agents or employees, of a Diesel engine, or other machinery in and about the Cloverleaf Dairy plant.

"2. The plaintiffs, Blanche Lipscomb, Margaret McKinsey, John Alster and Sam Alster and all of them, have on many and divers times and occasions from and after the 24th day of July, 1934, to April 16, 1936, and up to the time of this trial, suffered a disturbance of their peace and quiet in their homes by reason of loud and violent noises caused by the loading and unloading of milk cans, milk cases and by the operating of trucks and other vehicles in and upon the premises of the Cloverleaf Dairy.

"3. The plaintiffs, Blanche Lipscomb, Margaret McKinsey, John Alster and Sam Alster, and all of them, have on many and divers times and occasions from and after the 24th day of July, 1934, to April 16, 1936, and up to the time of this trial, suffered discomfort, annoyance and inconvenience from disagreeable and obnoxious fumes, smoke and gasses from the plant of the defendant herein permeating the homes of said defendants [plaintiffs].

"4. The plaintiffs, John Alster and Sam Alster, have suffered great annoyance and discomfort from the noise of water dripping over cooling towers placed on the roof of said Cloverleaf Dairy plant from and after July 24, 1934, to April 16, 1936, and up to the time of this trial.

"5. The plaintiff, John Alster, has suffered great annoyance, discomfort and loss of sleep by reason of noises in and around a building constructed of glass blocks on said Cloverleaf Dairy premises since the issuance of the injunction of July 24, 1934, and prior to April 16, 1936, said building being used for the purpose of retailing products of said Cloverleaf Dairy and being operated sometimes until after one o'clock in the morning; that automobiles park outside said building and the occupants thereof are served with drinks, ice cream, ice-cream cones and other dairy and creamery products; that during the hot summer evenings with the windows of the Alster house open he can hear the boys employed by defendant herein giving the customers orders to persons inside said glass house; can hear the slamming of the screen doors thereof and can hear the ringing of the cash register; all of which noises greatly disturb said plaintiff and deprive him of sleep and rest.

"6. The vibrations, noises, gases, smoke and fumes which at times annoy, disturb and inconvenience plaintiffs are not constant, but are spasmodic. They do not occur at regular intervals, nor do they continue for regular periods of time. The gases, fumes and smoke annoy and disturb greatest under certain weather or atmospheric conditions.

"7. There are times when there are no noises, vibrations, smoke, gases or fumes that annoy these plaintiffs, although the plant is in operation.

"8. It is possible for defendant to so operate his dairy plant as to not jar, shake or otherwise disturb or put to great inconvenience, annoyance or damage the property or peaceable enjoyment thereof by said plaintiffs.

"9. It is possible for defendant to so operate his dairy plant and to load and unload milk cans and cases of bottled milk and to operate trucks and other vehicles in and upon said premises so as to not cause loud and violent noises sufficient to disturb the peace and quiet of the plaintiffs.

"10. It is possible for defendant to so operate his dairy plant as to not cause disagreeable and obnoxious fumes, smoke and gases to permeate the homes of said plaintiffs to their discomfort, annoyance and inconvenience.

"11. It is possible to operate the retailing of dairy and creamery products by defendant without shouting of orders and slamming of doors which disturb and annoy the plaintiff, John Alster.

"12. It is possible for defendant to so operate his dairy plant without cooling towers with water constantly dripping to the annoyance and discomfort of the plaintiffs, John Alster and Sam Alster.

"13. That by reason of the failure and refusal of said defendant to obey the injunctive orders of this court, said plaintiffs have been compelled to hire an attorney to prosecute this contempt action at an expense of $300, which is a reasonable fee therefor.

"14. The court finds that the defendant is guilty of contempt in the violation of said injunction in the manner stated in the above findings of fact.

"15. The court further finds that such violations of said injunction were done knowingly, willfully and contemptuously by the defendant, Joseph L. Allen."

"CONCLUSIONS OF LAW

"1. The defendant, Joseph L. Allen, doing business as Cloverleaf Dairy, has disobeyed the injunctive orders of this court as specified and set out in the judgment of injunction granted and entered in the records of this court on the 24th day of July, 1934, in the case of John Alster, et al., plaintiffs, versus Joseph L. Allen, doing business as Cloverleaf Dairy, defendant, by operating and running a Diesel engine or other machinery causing such vibrations as have jarred, shaken or otherwise disturbed or put to great inconvenience, annoyance or damage the property or peaceable enjoyment thereof by the plaintiffs, Blanche Lipscomb, Margaret McKinsey, John Alster and Sam Alster, by loading and unloading milk cans and operating trucks and other vehicles in and upon said premises so as to cause loud and violent noises sufficient to and which did disturb the peace and quiet of said above-named plaintiffs, and by operating the dairy plant of the Cloverleaf Dairy in such a manner as to cause disagreeable and obnoxious fumes, smoke or gases to permeate the houses of said above-named plaintiffs, to their discomfort, annoyance and inconvenience between said 24th day of July, 1934, and the 16th day of April, 1936, and from said 16th day of April, 1936, to the time of this hearing and trial.

"2. That by reason of the disobedience of said injunction, as set forth, the defendant, Joseph L. Allen, is in contempt of this court, and should be punished therefor."

The court adjudged and decreed the defendant, Joseph L. Allen, doing business as the Cloverleaf Dairy, to be guilty of contempt of court and fined him $100 and the further sum of $300 to be paid into court within fifteen days for attorney fee in prosecuting the contempt proceeding, and ordered him to give bond for $1,000 conditioned upon the obedience by him, his successors, grantees or assigns of the injunction therefor issued herein and every part thereof and to pay

the costs of the action. The defendant filed a motion to set aside the findings, a motion to set aside the conclusions, a request for additional findings, a motion to set aside the judgment and a motion for a new trial, all of which were overruled, and the defendant promptly and in due time served notice of appeal. The plaintiffs also served a notice of cross-appeal as to the amount of the attorney fee.

The appellant has argued very studiously and earnestly under seven different headings why the findings and conclusions that the defendant was in contempt of court for violating the injunction were erroneous and should be set aside. The first ground urged is that the accusation in contempt is too indefinite to sustain the judgment finding the appellant guilty of contempt. Among the reasons discussed is the fact that the accusation nowhere gives dates of the specific violations of the injunction order. The accusation simply says "since said mandate was duly spread upon the records of this court the said defendant has continued on divers days and times and up to the filing of this accusation, the exact times and dates of which plaintiffs are unable to state, violated the terms and conditions of said injunction. . . ." That statement limited the period to approximately one year. The injunction case was affirmed in this court on April 6, 1935, and the accusation was filed April 16, 1936. G. S. 1935, 20-1204, which prescribes the procedure for indirect contempts, states that, ". . . a written accusation setting forth succinctly and clearly the facts alleged to constitute such contempt shall be filed. . . ."

It is said in 1 Bancroft on Code Pleading, 995, that—

"Ordinarily, an allegation of time is not controlling, and the party responsible for such an allegation is not bound to prove it literally, but may show the actual transaction, although it occurred at a time other than that alleged. Generally speaking, it is the transaction, rather than the time at which it occurred, that is the material thing."

Even if we were to consider a contempt accusation for violating an injunction order as a criminal action, which we do not, the dates would not be absolutely necessary in the indictment as is provided by G. S. 1935, 62-1006, where it is said:

"The precise time of the commission of an offense need not be stated in the indictment or information; but it is sufficient if shown to have been within the statute of limitations, except where the time is an indispensable ingredient in the offense."

Besides, the amended accusation states that the plaintiffs were unable to state the exact times and dates of the various violations.

The appellant insists that aside from the question of dates and times, that the allegations of the accusation were only conclusions of law to the effect that the appellant was violating the injunction in every manner mentioned in the injunction order. We have purposely set out herein the essential portions of the injunction order and the accusation so as to show that the accusation went further than to allege a violation of the injunction order. It stated that it was being violated by the appellant by the operation of a Diesel engine or machinery in his plant which caused vibrations so as to jar, shake and disturb the plaintiffs. It spoke of further violations in loading and unloading milk cans, causing loud and violent noises, and operating the plant in such a manner as to cause disagreeable, obnoxious, dangerous and unhealthy fumes, smoke or gas to permeate the homes of the plaintiffs. By turning to the contents of the injunction order, as given herein, it will be observed that practically the same and identical matters were forbidden therein. It is therefore not a mere conclusion, but facts are alleged which constitute the violation and disregard of the injunction, if they should be established later by proof.

Appellant cites in this connection: *Heatherman v. Kingman County Comm'rs,* 132 Kan. 590, 296 Pac. 707; *Hartman v. Wolverton,* 125 Kan. 202, 263 Pac. 789; *Howard v. Eddy,* 56 Kan. 498, 43 Pac. 1133, and cases from other jurisdictions, to show that specific and definite violations of the injunctive order are necessary, which we admit to be the correct rule, but we think the cases cited do not approach the requirements therein outlined as necessary as to the allegations of the accusation in the case at bar. In the Heatherman case, *supra,* the court dismissed the accusation because it was not specific as to the violations. It was where an order was procured requiring the county commissioners to keep part of the road in question in "passable condition," and they later provided for a ford across the stream instead of a bridge. The accusation was dismissed and the following language was used in the opinion:

"A contempt proceeding is a little different from any other. It is not like a criminal proceeding. It was the duty of the appellant to call the attention of the court to the fact that appellees were not showing the proper respect for its orders." (p. 592.)

The Hartman case, *supra,* where the accusation was also dismissed, was where the defendant had been enjoined from erecting a building for temporary or permanent residence which would not comply with

certain restrictions, but the injunction contained no order whatever as to occupying such building, and it was said in the opinion:

"Occupancy and use forbidden by the restraining order were omitted from the injunction order, which was limited to the single subject of erecting a temporary or permanent residence. Therefore, the court was not authorized to found a judgment of contempt on the restraining order." (p. 205.)

The second paragraph of the syllabus in the Howard case, *supra*, is a concise and forcible rule, but we think it is inapplicable to the case at bar, which does allege facts and circumstances upon which the so-called conclusion in the first part of the accusation rests.

We think the accusation was not indefinite, but that it alleged violations of the injunction by referring to various vibrations, noises and odors, all of which were forbidden by the injunction.

We shall consider together the second and third points briefed by the appellant, the second being that equity should not countenance spiteful claims of annoyance when contrary to facts scientifically established. The third point is that scientific investigations show no disturbance was caused by the Cloverleaf Dairy. We have no difficulty in agreeing with the wholesome and correct theoretical principle announced as a second ground of appellant's claim of error, but it requires evidence to make that proposition workable, evidence that the claims of the plaintiffs were spiteful and for the purpose of annoyance and also satisfactory evidence of the contrary facts being sufficiently and scientifically established.

The third point urged goes to this last-named proposition and we find no evidence in the record reflecting on the character or superior scientific attainments and ability of the expert witness, the professor of physics at the University of Kansas. His scientific statements, however, were partly built and based upon his own personal observations and upon answers received to his inquiries from others. There were also some other experts, chemists among others, and various tests were made by delicate instruments to observe and detect the jar or shaking of the buildings at different times and places and in different houses near by, particularly those occupied by the plaintiffs, and this evidence by these several experts negatived or reduced to a minimum any and all of the offensive and objectionable character of the vibrations, noise, fumes and disturbing features claimed to have surrounded the dairy plant. To this extent it was either partially or wholly in conflict with the evidence of some of the other witnesses, and it was therefore an element for consideration in

connection with any and all of the pertinent and competent evidence introduced in the case and not such as would be indicated by the heading of this subdivision as being in itself absolutely controlling regardless of the conflict between it and other testimony.

The fourth topic discussed by counsel for appellant is that the evidence produced does not establish contempt on the part of the appellant, and in this connection, in addition to citing and quoting numerous portions of evidence, it cites *Phillips v. Brick Co.*, 72 Kan. 643, 82 Pac. 787, and *Shepler v. Kansas Milling Co.*, 128 Kan. 554, and other cases to the effect that natural rights of persons may be curtailed which the sufferer must sustain without other return therefor than the manifold benefits which inure to him as a citizen privileged to reside in and earn his livelihood in an orderly community, all of which can and will be readily admitted as general principles, but they should not go to the extent of greatly annoying the neighbors or causing loud and violent noises sufficient to disturb the peace and quiet or causing disagreeable, obnoxious, dangerous and unhealthy fumes and smoke to penetrate their homes, as is alleged in the accusation. There was evidence showing that there were times when no noises or vibrations were observable, but that does not go to the extent of showing there were none such at other times, so it always was and always will be a question of fact as to the extent of the vibrations, noise and fumes.

This same paragraph in the brief discussed the lack of good faith on the part of the neighbors, particularly the plaintiffs. That is proper to be considered in weighing the testimony. It will be impossible to take up and discuss every item of testimony which is presented and discussed by the attorneys in their briefs. One feature is mentioned in this connection as to the extent and weight of evidence necessary in a case of this kind. Reference is made to 6 R. C. L. 530 and also to 13 C. J. 77, where the degree of evidence required in such a case was discussed. A portion of the latter text is as follows:

"Many cases insist that the accusations must be supported by evidence sufficient to convince the minds of the triors beyond a reasonable doubt of the actual guilt of the accused, especially in cases of criminal contempt." (13 C. J. 78.)

In the same paragraph it is also stated:

". . . there is an irreconcilable conflict of judicial opinion as to the sufficiency of evidence where the contempt is based on the violation of an injunction, some cases holding that the guilt of defendant must be established

beyond a reasonable doubt, and that a conviction resting on *ex parte* affidavits will be set aside, while others hold that a preponderance of evidence as in other civil cases is sufficient."

There is no question about its being considered a civil matter in this case. In the fourth paragraph of the syllabus in the case of *Holloway v. Water Co.*, 100 Kan. 414, 167 Pac. 265, it is held:

"Under section 6 of article 6 of the constitution (Gen. Stat. 1915, § 208) the fine for contempt in violating an injunction goes to the support of common schools, although the proceeding to punish for such contempt was in this case civil rather than criminal."

The fifth subdivision of the appellant's brief refers to John Alster, one of the plaintiffs, not being a person of normal sensibilities, and refers to the rule that such matters should be considered as affecting normal persons. It also refers to the testimony of his physician as to John being supersensitive. If he were the only plaintiff here concerned, this proposition might become a very serious matter, but there are other plaintiffs and a number of other witnesses who were not plaintiffs, so we are not necessarily dependent upon the question of John's being normal in his being affected by such matters as are herein claimed to be nuisances and obnoxious, and we can consider the others and avoid passing upon this one particular person and his impressions, feelings and testimony.

The sixth subdivision considers the findings and asserts that they are contrary to the law and the evidence in this case. As stated before, it will be impossible to include in this opinion a discussion of all of the testimony, or even the numerous parts that are quoted and cited in the briefs, but all of the testimony, both pro and con, has been considered, and we shall now attempt to compare our views and impressions concerning the same with those of the trial court as shown by its findings.

We approve and affirm the first, second and third findings of the trial court, and find they are supported by sufficient and more than a preponderance of competent evidence, except that the second finding should not contain the name of Margaret McKinsey, and the third finding should not contain the name of Sam Alster; but the elimination of the name of one person from each of the second and third findings will not affect the validity and force of the findings as a proof of contempt.

As to the fourth and fifth findings, we believe the defendant should not be bound thereby because they concern facts and situa-

tions which were not definitely mentioned either in the injunction or accusation, namely, the water dripping over a cooling tower; also the noise in the glass block building, slamming of doors, parking of automobiles for the purpose of purchasing ice cream and other dairy products and the ringing of the cash register, for the reason that such matters were not included in the injunction and accusation.

Findings eleven and twelve are not approved because they refer exclusively and specially to the same matters that are contained in findings four and five.

All the other findings are approved and affirmed and found to be established by sufficient and more than a preponderance of competent evidence.

Special objection is made to the last finding, which is to the effect that the violations of the injunction order were done knowingly, willfully and contemptuously. There is ample evidence to show that, with possibly one exception, these violations were not accidental, which of course would not have made a violation of the injunction order contemptuous, but they were made knowingly and willfully, although the evidence shows there were many changes made in the equipment and manner of operation which were for the improvement and the lessening of the objectionable features, but still the vibrations, the noise of loading and unloading and the obnoxious odors and fumes remained, as the evidence showed, and with the knowledge and under the direction of the defendant. Some of the other findings are of a negative character, showing it was found to be possible for the plant to be operated in obedience to the injunction order. These were pertinent findings along the same line as to the matter of their occurrence and repetition being done knowingly and willfully.

There were two conclusions of law made by the trial court which we think were proper and were based upon sufficient findings of fact to justify a legal conclusion of contempt.

The next ground of complaint urged in the appellant's brief is upon the question of admission and exclusion of evidence by the trial court. Many instances are cited by appellant in this connection, some of which might constitute error, but this case was tried before the court without a jury and the rule is less exacting in that case in order to constitute a presumption of law, and therefore come under the provisions of our rule of court No. 52. We do not understand that any such point is raised or urged in this connection.

There was a distinct misunderstanding about the naming of the professor of physics of the state university as a party to investigate the matter complained of, and whether or not he was named as an officer of the court to make a report or was only an expert witness to examine into the matters at issue and testify as a witness. For that reason the court did not formally receive his report, but permitted him to testify as a witness of the defendant, in which testimony he went into the observations and investigations which he had made, and related in detail the results of his experiments with delicate instruments with reference to the question of vibrations, noises, fumes and gases. The attorney for appellant has filed the full report of this expert witness and also a supplemental report, which are contained in the abstract. They have been considered here in the review of the case as well as the testimony of this witness as it was introduced in evidence. Even if the court was mistaken in the matter of the extent of his employment and that the report and supplementary report should have been submitted as such, it would have been only advisory, as is the report of a commissioner appointed by the court to make findings and recommendations (*State, ex rel., v. Buchanan,* 142 Kan. 515, 51 P. 2d 5); so we see no substantial, serious or reversible error in the matter of the introduction or exclusion of evidence.

This concludes the consideration of matters under the appeal of defendant, but leaves for consideration the cross-appeal filed by the plaintiffs which has reference only to the question of attorney fee, which is stated in finding No. 13. The appellant urges that this appeal should be dismissed because the alleged error in finding No. 13 was not presented to the trial court by the plaintiffs, but the point was raised for the first time by plaintiffs in this court. Of course, the objection to all the findings, which was made by the appellant, includes this one which grants a fee of $300, and the argument is that it should not have been any sum whatever, but the point insisted upon by the plaintiffs is that under the evidence it should have been $500 instead of $300, and they cite the recent case of *Wollard v. Peterson,* 145 Kan. 631, 66 P. 2d 375, in which the attorney fee was an entirely separate matter from the other features of the case, from which no appeal was taken, and this court did consider and change the amount of the attorney fee. There is no question about the right of this court to do so, but it is necessary for it to be called to the attention of the trial court before it can be considered as an error and be subject to review in this

court. It was held in the recent case of *Stephenson v. Wilson*, 147 Kan. 261, 76 P. 2d 810:

"On appeal no reversible error can be predicated on a point of law not fairly and timely raised in the trial court." (Syl. ¶ 4.)

It was held in *Skibbie v. Liberty Life Ins. Co.*, 130 Kan. 121, 285 Pac. 581, that—

"Alleged errors not brought to the attention of the trial court cannot form a basis for review in an appellate court." (Syl. ¶ 3.)

We conclude that the cross-appeal of the plaintiffs should be dismissed and the judgment of contempt affirmed. It is so ordered.

ALLEN, J., dissenting.