No. 36,712

The State of Kansas, ex rel. Patrick J. Warnick, County Attorney of Sedgwick County, and The Kansas State Board of Medical Registration and Examination, *Appellees,* v. Quintos W. Wilson, *Appellant.*

(178 P. 2d 277)

Opinion filed March 8, 1947.

*Howard T. Fleeson,* of Wichita, argued the cause, and *Homer V. Gooing, Wayne Coulson, Paul R. Kitch, Manford Holly* and *Dale M. Stucky,* all of Wichita, were with him on the briefs for the appellant.

*Blake A. Williamson,* of Kansas City, argued the cause, and *A. B. Mitchell,* attorney general, *Patrick J. Warnick,* county attorney, *Carl I. Winsor, Harlin E. Bond* and *Rupert Teall,* all of Wichita, were with him on the briefs for the appellees.

The opinion of the court was delivered by

Burch, J.: The appeal in this case is from a judgment fixing a fine and punishment for indirect contempt arising by reason of the alleged violation of an injunction which prohibited the accused from practicing medicine and surgery. The indirect contempt proceedings were brought pursuant to G. S. 1935, 20-1204.

The first question presented is whether the word "thereupon" in the above-cited statute requires that when a defendant is cited to show cause why he should not be accused and tried for contempt it is necessary, at the time the defendant appears in court in obedience to the citation, to file immediately and without any delay, a

formal accusation against him. The second question presented is, when one is enjoined from engaging in the practice of medicine and surgery, may he be punished for contempt without accusation and proof being made by the state that he unlawfully performed surgery by reason of his having failed to obtain, subsequent to the issuance of the injunction, a license to practice medicine and surgery before he performed a surgical operation? In other words, was the burden upon the state to plead and prove that the accused was practicing unlawfully because he had not obtained a license before he violated the injunction?

The petition in the original action, which was brought to enjoin the defendant from the unlawful practice of medicine and surgery, alleged that the defendant was not and never had been licensed to practice medicine and surgery in Kansas; that on three occasions he had performed surgical operations for a fee and had dispensed medicine and drugs to patients, and that unless he was enjoined he would continue to practice medicine and surgery in violation of the laws of Kansas. After some preliminaries the defendant appeared and consented to a decree of injunction which ordered that the defendant should be permanently enjoined from practicing in the state medicine and surgery and drug therapy from and after February 1, 1945. On November 27, 1945, a motion was filed by Patrick J. Warnick as county attorney of Sedgwick county, Kansas, which recited the injunction decree and that in violation thereof the defendant, on September 14, 1945, had performed a surgical operation on a certain party named therein. The motion requested that a citation be issued directing the defendant to appear on a day certain and to show cause why he should not be proceeded against and punished for contempt. The court made an order citing the defendant to appear in court on December 3, 1945, to "show cause if any you may have, why you should not be accused, and placed upon trial, and punished for contempt of court." The defendant appeared at the time commanded by the citation but made no showing at such time as to why he should not be accused. As a consequence the court entered an order providing therein that the plaintiffs file written accusations against the defendant within five days and that the defendant file his pleadings to said accusations within twenty days after the filing of the accusations. Within five days thereafter an accusation was filed formally charging the defendant with contempt of court arising by reason of his performing the sur-

gical operation hereinbefore referred to. Twenty days after the accusation was filed the defendant filed a. motion to strike it from the files. One of the reasons given in support of the motion to quash was "that said accusation was not filed on the occasion and at the time required by G. S. 1935, 20-1204 and is therefore of no force or effect"; another reason asserted in support of such motion was that the accusation did not state facts sufficient to charge the defendant with any contempt of court. All other contentions raised by the motion to quash and by other motions filed in the case have been abandoned in this appeal except insofar as they may be germane to the two questions presented by the appeal. On May 6, the defendant filed an answer to the accusation of contempt, in which he denied generally and specifically every material allegation in the accusation except that the injunction had been issued. The answer alleged many other grounds of defense but it did not allege that the defendant, subsequent to the issuance of the injunction and prior to September 14, 1945, had obtained a license to practice medicine and surgery in the state. Trial on the issues thus joined by the pleadings occurred on June 18, 1946. In connection therewith the defendant objected to further proceedings upon all of the grounds set forth in the motions, including those specifically set forth herein. The defendant's objections were overruled and evidence was introduced which established that the defendant had performed the surgical operation on September 14 as charged in the accusation. No evidence was introduced, however, which proved that the defendant had not obtained a license to practice medicine and surgery before he performed the alleged unlawful operation. The defendant offered no evidence but at the conclusion of the evidence offered by the state filed a motion for discharge predicated upon the contention that the state had failed "to prove that the defendant . . . is engaged in the unlawful practice of medicine or has engaged in the unlawful practice of medicine since the entry of the decree . . ." The trial court overruled the motion and entered judgment and sentence which provided "that the defendant pay a fine of $200 to the clerk of this court for the benefit of the common school fund of this county and that he be committed to the county jail of Sedgwick county, Kansas, for a period of sixty days; and that he pay the costs of the prosecution and that he stand committed until such fine and costs shall be paid." The judgment and sentence were stayed for a

period of ten days to permit the defendant to file a stay bond in the amount of $500 pending the defendant's appeal to this court. Notice of appeal and filing of the bond followed.

Before giving consideration to the questions presented, we digress to observe that this court is not concerned in this appeal with any questions pertaining to the propriety of the issuance of the original injunction. Questions relative to the merits of any controversies which may exist among different schools of medicine likewise are not involved in the consideration of this case.

1. Does the word "thereupon" as used in the statute (G. S. 1935, 20-1204) mean "immediately"? The statute reads:

"That upon the return of an officer on process or an affidavit duly filed showing any person guilty of indirect contempt, a writ of attachment or other lawful process may issue, and such person be arrested and brought before the court or judge in chambers; and *thereupon* a written accusation setting forth succinctly and clearly the facts alleged to constitute such contempt shall be filed, and the accused required to answer the same, by an order which shall fix the time therefor and also the time and place for hearing the matter; and the court or the judge in chambers shall, on proper showing, extend the time so as to give the accused a reasonable opportunity to purge himself of such contempt. . . ." (Emphasis supplied.)

Attorneys for the defendant cite many of our cases holding, in substance, that the word "thereupon" has a meaning which is equivalent to "immediately" or "without delay or lapse of time." To such effect they cite *Dewey v. Linscott*, 20 Kan. 684, 687; *Hill v. Wand*, 47 Kan. 340, 27 Pac. 988; *Morrison v. Wells*, 48 Kan. 494, 29 Pac. 601; *Humbarger v. Humbarger*, 72 Kan. 412, 83 Pac. 1095; *Hallam v. Huffman*, 5 Kan. App. 303, 48 Pac. 602. In some of the cited cases it was well recognized, however, that the word "thereupon" has at least two meanings. Its meaning is not always limited to the equivalent of "immediately," but the word often refers to the next step of procedure following the performance of conditions precedent. It has been defined as meaning "upon this, or that." It is used for the purpose of referring to a cause or condition precedent. (See *Dewey v. Linscott*, and *Hill v. Wand*, supra.) Reference to any dictionary, recognized as reliable, will confirm the fact that the word is frequently used to denote a following or consequence of preceding events. When considered in statutory interpretation the word often is construed as referring to a succession of events in the order or sequence of their performance rather than regarded as an adverb of time. (See *Porphyry Paving Co. v. Ancker*, 104 Cal. 340, 37 Pac.

1050; *Cal. Academy Sciences v. Fletcher,* 99 Cal. 207, 33 Pac. 855; *People v. Wascher,* 349 Ill. 114, 181 N. E. 606; *In re Opinion of the Justices,* 309 Mass. 609, 35 N. E. 2d. 5; *Decker v. City of Toledo,* 56 Ohio App. 344, 10 N. E. 2d 955; *Denver, W. & M. Ry. Co. v. Adkinson,* 28 Okla. 1, 119 Pac. 247; and *Yuma Water Ass'n v. Schlecht,* 262 U. S. 138, 43 Sup. Ct. 498, 500, 67 L. Ed. 909.)

Since the word "thereupon" has at least two meanings and actually several more, we must consider which of its meanings was intended by the legislature when the statute under consideration was passed. Analysis of the statute does not lead us to the conclusion that it was ever the intent of the legislature to make time the essence of each step of procedure to be followed in proceedings pertaining to indirect contempt of court. The statute does not attempt to set forth how soon, after an affidavit is filed asserting that a person is guilty of indirect contempt, the writ of attachment or other lawful process must follow; neither does the statute fix the time in which the accused shall be required to answer. It leaves decision upon that question to the discretion of the trial court and also leaves to its discretion the time and place to be fixed for the hearing and provides that the court may extend the time so as to give the accused a reasonable opportunity to purge himself of the contempt. Obviously, it was not the intent of the legislature, in enacting the statute, to be mandatory in determining the time in which all the various steps in the proceedings should occur.

Attorneys for the defendant advance the argument that the contempt sought to be charged was a criminal contempt and that, therefore, technical defenses are available and that the statute must be followed with a high degree of strictness. In support of such contention they cite *Holloway v. Water Co.,* 100 Kan. 414, 167 Pac. 265; *Smith v. Clothier,* 113 Kan. 47, 213 Pac. 1071; *Hartman v. Wolverton,* 125 Kan. 202, 263 Pac. 789; and *State, ex rel., v. Miller,* 147 Kan. 242, 75 P. 2d 239. We will give reported consideration to the argument. In the case of *State v. Fishback,* 79 Kan. 679, 100 Pac. 656, we held that an accusation in a contempt proceeding need not possess the formalities of an indictment or an information. We also held in *State ex rel., v. City of Coffeyville,* 90 Kan. 164, 167, 133 Pac. 711, that supplemental charges could be filed in a contempt proceeding provided the respondents were not denied an opportunity to meet them. In 1910 this court held in *Butler v. Butler,* 82 Kan. 130, 107 Pac. 540, that the filing of an accusation could be waived.

If accusations can be waived, and no doubt they often are, it is not practical to require that they be prepared in advance. The legislature apparently has approved such a construction of the statute by not changing its wording in such respect during the twenty-five years which have followed since the decision in the last-cited case. Also, it may be observed that indirect contempt proceedings are not always regarded as criminal in their nature. (See 12 Am. Jur. 433; and *Heatherman v. Kingman County Comm'rs*, 132 Kan. 590, 296 Pac. 707, and *Alster v. Allen*, 147 Kan. 489, 495, 77 P. 2d 960.) There is no necessity in this appeal for us to pass upon the question whether the defendant was guilty of the commission of a crime or merely guilty of civil contempt.

Even in criminal proceedings this court is not concerned with technicalities which do not affect the substantial rights of the parties. (See G. S. 1935, 62-1718, and cases cited thereunder; and, also, *State v. Willhite*, 161 Kan. 113, 166 P. 2d. 562.) Can it be said that the substantial rights of the accused in this case were affected by the five-day delay in the filing of the accusation? The motion filed prior to the citation and to the filing of the accusation set forth practically the same information as was later included in the accusation. Therefore, the defendant was adequately informed by the motion and by its reference to the injunction that he was to be accused of contempt because he had performed an operation in violation of the injunction. He cannot be heard to say that he was not familiar with the provisions of the injunction because he had consented to its issuance. The defendant was found guilty of contempt only because he had performed a surgical operation in violation of the injunction. All other charges, later embodied in the accusation, were either abandoned or not sustained. The delay of five days in filing the accusation actually allowed the defendant more time in which to consider any defense he might have had to the accusation which was to be filed against him. In so far as the substantial rights of the defendant are concerned, the citation for appearance might just as well have commanded the defendant to appear five days later and in such event the defendant certainly would not have been in a position to complain because he had not been cited to appear five days earlier. Nothing in connection with the delay handicapped the defendant in the preparation of his defense or penalized him in any manner. Therefore, we are unable to discern wherein his substantial rights were prejudicied by any technical error which it is asserted

occurred by reason of the failure to file the accusation at the moment the defendant appeared in obedience to the citation. Moreover, the record does not disclose that the accused made any objection at the time of its issuance to the order of the court which required the accusation to be filed within five days rather than forthwith. If the objection had been made at such time, probably the accusation could have been filed forthwith. We do not decide whether his failure to make the objection at such time resulted in the objection being waived because such a question has not been argued and briefed by the parties. We conclude that under the statute being given consideration the word "thereupon" should not be construed as meaning "immediately" and that the accusation may be filed within a reasonable time after the defendant appears following citation or other process. We also hold that five days is such a reasonable time and that such delay in this case did not impose upon the substantial rights of the accused.

2. The second point urged by defendant is predicated upon two principal contentions. The first, in effect, is that the original injunction was erroneous because it was too broad in that it enjoined the defendant from practicing medicine and surgery when it should have enjoined him only from unlawfully practicing the same. The defendant did not appeal from the injunction order, however, and could not have done so because he had consented to its issuance. Since the trial court had jurisdiction of the defendant and of the subject matter, any irregularities in the original injunction are not subject to collateral attack. (*State, ex rel., v. Pierce*, 51 Kan. 241, 32 Pac. 924; *State v. Fishback*, supra, *Howat v. Kansas*, 258 U. S. 181, 42 Sup. Ct. 277, 66 L. Ed. 550; *In re Debs*, 158 U. S. 564, 15 Sup. Ct. 900, 39 L. Ed. 1092; *Swift & Co. v. United States*, 276 U. S. 311, 48 Sup. Ct. 311, 72 L. Ed. 587; *Fleming v. Warshawsky & Co.*, 123 F. 2d 622; *Fleming v. Alderman*, 51 F. Supp. 800; and *Wyman v. Bell*, 96 Colo. 223, 41 P. 2d 242.) The cited cases are also authority for the rule that an injunction order which is not void but is merely irregular or erroneous must be obeyed unless it is set aside by direct proceedings as distinguished from collateral. (See, also, 17 C. J. S. 21, and 43 C. J. S. 1006.)

The final contention of the defendant is that even though the injunction prohibited him from practicing any medicine or surgery, it must, nevertheless, be construed as only prohibiting him from

practicing medicine and surgery unlawfully because the statute authorizing the issuance of an injunction in this type of case (now G. S. 1945 Supp., 65-1010) is limited in its application to the issuance of injunctions against the unlawful practice of medicine and surgery. The defendant, therefore, strenuously argues that it was the duty of his accusers to prove that he was practicing medicine and surgery unlawfully and that, consequently, the failure to prove that he had not obtained a license was a fatal omission. In other words, it is contended, in substance, that the state having failed to negative a defense, a presumption of innocence therefore prevailed, and that the state failed to prove beyond a reasonable doubt that the defendant was guilty of indirect contempt because the evidence did not establish that the defendant was acting unlawfully. We are unable to find any merit in the contention. Technically, under the decisions hereinbefore cited, the defendant would have been guilty of indirect contempt even if he had obtained a license before he performed a surgical operation because the injunction had not been dissolved and it prohibited him from practicing medicine and surgery regardless of whether he did so lawfully or otherwise.

If we ignore the aforestated technical rule, we are again confronted with the realization that the substantial rights of the defendant were not prejudiced by the failure to prove, as a part of the state's case, that he had not obtained a license to practice medicine and surgery. The petition in the original injunction clearly set forth that the defendant did not have a license. As hereinbefore stated, he had consented to the issuance of an injunction justified by that fact. He had been fully informed by the petition as to the fundamental basis of the complaint against him. Unquestionably, he would have opposed the injunction if he had held a license. When he appeared in obedience to the citation in the indirect contempt proceedings, he could then have advised the court that there was no occasion to accuse him of indirect contempt if he could have shown that he had obtained a license after the issuance of the injunction. The motion for citation set forth that he had violated the injunction which, as aforesaid, was predicated upon his failure to have a license. Also, we again observe that the motion filed prior to the citation and prior to the filing of the accusation set forth practically the same information as was

later contained in the accusation. Therefore, the defendant, at all times throughout the proceedings, was adequately advised that all such proceedings were predicated primarily upon his failure to have a license. We cannot conclude, in such circumstances, that the substantial rights of the defendant were affected by either the omission of proof that he had not obtained a license or the failure to allege such fact in the accusation. Even an indictment or information may not be quashed in such circumstances. G. S. 1935, 62-1011, reads:

"No indictment or information may be quashed or set aside for any of the following defects: . . . *Seventh.* For any other defect or imperfection which does not tend to the prejudice of the substantial rights of the defendant upon the merits."

(See, also, G. S. 1935, 62-1718, hereinbefore cited.) Even if we concede that indirect contempt proceedings have, in some cases, criminal aspects, though it is more accurate to state that each case is *sui generis* in that it is within a class of its own, nevertheless, there is a significant difference between proceedings for indirect contempt and ordinary criminal proceedings. Under the statute (G. S. 1935, 20-1204) the accused is required to answer the accusation and, therefore, issues are joined by pleadings. In this case, since the answer filed by the defendant did not allege that the defendant had obtained a license after the issuance of the injunction, that issue was not before the court and it was not incumbent upon the state to anticipate a defense which was not pleaded.

The judgment of the district court is affirmed.