No. 27,828.

DALE HARTMAN and R. D. MOLES v. H. E. WOLVERTON: In re Appeal of H. E. WOLVERTON, Cited for Contempt.

(263 Pac. 789.)

SYLLABUS BY THE COURT.

INJUNCTIONS—*Proceedings to Punish for Contempt—Matters Within Decree— Violation of Building Restrictions.* In an action of injunction to prevent violation of a building restriction, a temporary order restrained constructing or occupying or using as a residence any building of a certain character. While the suit was pending, a structure designed for ultimate use as an outbuilding was completed for occupancy as a temporary residence, until a dwelling house complying with the restriction could be built. When final judgment was rendered the temporary order was not made permanent, but a permanent injunction was granted restraining erection of a building for temporary or permanent residence which would not comply with the restriction. Afterwards the builder moved into the outbuilding and occupied it as a residence. He was then charged with violating the injunction by moving into the outbuilding and occupying it as a residence, was cited for contempt, and was adjudged guilty of contempt for violating the restraining order and for violating the injunction order. *Held,* the judgment was erroneous.

---

Contempt, 13 C. J. p. 64 n. 77. Injunctions, 32 C. J. pp. 485 n. 37, 495 n. 70.

Appeal from Johnson district court, GARFIELD A. ROBERDS, judge. Opinion filed February 11, 1928. Reversed.

*Chauncey B. Little* and *Judson S. West,* both of Olathe, for H. E. Wolverton.
*Frank D. Hedrick,* of Olathe, for R. D. Moles.

The opinion of the court was delivered by

BURCH, J.:   The proceeding was one to punish for an indirect contempt committed by disobeying a permanent injunction. The accused was found guilty, was fined, and appeals.

Wolverton purchased a lot in Goodman Heights, a subdivision of land in Johnson county dedicated to use for residence purposes. The dedication contained the following building restrictions:

"(2) No residence costing less than twenty-five hundred dollars shall be built on any lot in this addition, or any subdivision thereof.

"(4) All outbuildings shall be constructed of good quality of recognized building material and completely finished of quality and character that will not be injurious to or hinder the sale of any other tract or portion of said property, and shall not be constructed or permitted to be located within fifty feet of the line of any public highway."

Wolverton purchased his lot of Abby Abshire, who held by contract of purchase from the proprietors of the subdivision, and began to improve the lot by constructing outbuildings. One of them, a frame building 16 by 28 feet, roofed with slate shingles, and costing approximately $800, was designed for ultimate use as a chicken house. Acting under an arrangement with Abshire's agent, Wolverton contemplated completing the outbuilding for temporary occupancy until 1928, when he intended to erect his dwelling house at a cost of approximately $6,000. On March 29, 1927, Hartman and Moles commenced an action to enjoin Wolverton from violating the building restriction imposed on the subdivision, and on the same day a temporary restraining order was issued, which read as follows:

"It is therefore ordered that said defendant, H. E. Wolverton, be and he is hereby restrained from constructing or occupying or using as a residence any building upon said lot 52, Goodman Heights, a subdivision in Johnson county, Kansas, costing less than $2,500, or from erecting 'any outbuilding not constructed of good quality of recognized building material and completely finished of quality and character that will not be injurious to or hinder the sale of any other tract or portion of said addition."

No bond was given, and the restraining order did not become operative until April 2. On March 30 Wolverton filed a verified mo-

tion to set aside the restraining order, and on April 2 a hearing was had on this motion. The plaintiffs filed a bond, which was approved by the clerk, the parties agreed on the material facts, and the court gave Wolverton permission to inclose the building in order to protect it from the weather. Judgment was not rendered until April 16. Between April 2 and April 16 Wolverton inclosed the house, and went beyond the limits of the permission given him by putting on two little porches and preparing to convert the building into a dwelling house. Apparently the hearing on April 2 was a final hearing in the injunction suit, and the cause was taken under advisement until April 16. On April 16 the court returned findings of fact and conclusions of law, and final judgment was entered as follows:

"It is by the court ordered that the defendant H. E. Wolverton be and he is hereby enjoined and restrained from the erection of a temporary or permanent residence in Goodman Heights subdivision in Mission township, Johnson county, Kansas, costing less than $2,500."

Plaintiff Hartman, a lot owner in the subdivision, was denied relief because he had erected an outbuilding on his lot and had lived in it while he was putting up his dwelling house.

On or about May 2 Wolverton moved into his building. On May 9 Moles initiated the contempt proceeding by filing an affidavit which read as follows:

"That H. E. Wolverton, defendant in the case of *Dale Hartman et al. v. H. E. Wolverton,* has moved into and is occupying with his family, a building erected upon lot No. 52 in Goodman Heights, a subdivision in Johnson county, Kansas, as a residence, a building of a temporary nature, and costing less than $2,500, contrary to the injunction issued out of this court on the 16th day of April, A. D. 1927, in the above entitled case."

Citation was issued and served. It contained a recitation that whereas, Wolverton had, since the 16th day of April, "completed" and occupied a building, etc. No accusation was filed setting forth the facts alleged to constitute the contempt, and the only statement of facts forming a charge of contempt is that contained in the affidavit which served as a basis for issuing process. Wolverton answered that the injunction order contained no reference to occupation of the building, the Moles affidavit contained no reference to completing the building, and Wolverton had done nothing whatever toward erecting or completing the building after April 16, but had literally obeyed the injunction order.

The hearing occurred on May 24, and the court made findings of

fact which definitely fixed the order of events: First, the restraining order of March 29; after that, the permission to inclose the building; after that, the putting in of doors and windows, the construction of the porches, and the preparation of the building for residence; after that, the injunction of April 16; after that, occupancy of the building as a residence. The finding relating to occupancy read as follows:

"That thereafter, on or about the 2d day of May, 1927, said defendant, in further violation of said injunction and restraining order, moved into and occupied said building as a dwelling house, upon said lot in said addition, costing less than $2,500."

Since contempt of court may be punished by fine and by imprisonment, a person charged with contempt is entitled to know the nature and cause of the accusation against him. The informality in procedure in cases of indirect contempt adverted to in the case of *State v. Cutler*, 13 Kan. 131, is no longer considered permissible (*State v. Anders*, 64 Kan. 742, 68 Pac. 668). Process to bring the accused before the court must be founded on affidavit showing the contempt, except in cases not material here, and when the accused is brought before the court a written accusation setting forth succinctly and clearly the facts constituting the contempt must be filed. (R. S. 20-1204.) The accused may waive the filing of an accusation by answering the charge contained in the affidavit (*Butler v. Butler*, 82 Kan. 130, 133, 107 Pac. 540), but the authority of the court to punish rests on a written charge in some form showing the contempt. (13 C. J. 64.) The employment of contempt proceedings as a means of punishing disobedience of injunctions issued in cases arising out of industrial disputes was doubtless responsible for the statutes of 1897 and 1901, which now form article 13 of chapter 20 of the Revised Statutes of 1923, and the provisions of that article govern all classes of contempt proceedings. (R. S. 20-1206.)

In this instance the charge against Wolverton was contained in the Moles affidavit, which was specific in respect to the order disobeyed and the act of disobedience. Wolverton moved into the building and occupied it with his family as a residence, in violation of the injunction issued on April 16. Violation of the restraining order was not charged. The restraining order was not made permanent by the injunction order, and ceased to govern conduct when the injunction was granted. Occupancy and use forbidden by the restraining order were omitted from the injunction order, which was limited to the single subject of erecting a temporary or permanent

residence. Therefore, the court was not authorized to found a judgment of contempt on the restraining order.

According to the court's finding, the contemptuous conduct exhibited after the injunction against erecting was granted consisted in moving in and occupying. The case is not one in which equities may be balanced. The contempt proceeding was a special proceeding, conducted according to the mode prescribed for prosecution of criminal actions (R. S. 20-1204), and the punishment imposed was a fine. Whatever the court's conception of the situation at the time the injunction was granted may have been, and whatever the court may have intended to enjoin, the terms of the order are too plain to permit of enlargement by interpretation; and to substitute the words "moving in and occupying as a residence," for the words "erection of a residence," would be to rewrite the order.

The judgment of the district court is reversed, and the cause is remanded with direction to discharge the accused.