No. 46,164

STATE OF KANSAS, *Appellee,* v. JIM McPHERSON d/b/a KEYSTONE READER'S SERVICE, *Appellant.*

(493 P. 2d 228)

Opinion filed January 22, 1972.

*Jack N. Turner,* of Bogart, Turner, Kirk and Poe, of Wichita, argued the cause, and *Albert J. Kirk,* of the same firm, was with him on the brief for the appellant.

*David P. Calvert,* Deputy County Attorney, argued the cause, and *Vern Miller,* Attorney General, *Keith Sanborn,* County Attorney, and *Gary H. Jarchow,* Deputy County Attorney, were with him on the brief for the appellee.

The opinion of the court was delivered by

KAUL, J.: This appeal arises from proceedings instituted pursuant to the Kansas Buyer Protection Act, K. S. A. 1971 Supp. 50-601, *et seq.,* hereafter referred to as the act. It was enacted by the 1968 Legislature for the purpose of protecting buyers against fraud and certain other practices by or on behalf of sellers. The act also granted the attorney general and county attorneys certain powers and duties for the enforcement thereof. This appeal brings the act before this court for the first time. The issues herein involve procedures under enforcement provisions of the act.

The appellant, Jim McPherson, does business as Keystone Reader's

Service. He is engaged in the business of selling magazine subscriptions in Wichita and vicinity. After an investigation of certain sales practices used by appellant, the county attorney of Sedgwick County caused a petition for injunction, civil penalties and other relief to be filed in the district court. The petition enumerated a number of sales practices engaged in by appellant, which were alleged to be in violation of the act.

After negotiations between the county attorney and appellant, an arrangement was arrived at whereby appellant agreed to enter into an "Assurance of Discontinuance of Unlawful Practice", pursuant to provisions of 50-610 of the act.

On October 2, 1969, the county attorney presented to the district court a petition for approval of the "Assurance of Discontinuance of Unlawful Practice", pursuant to further provisions of 50-610. The appellant appeared *pro se* and also filed an "Entry of Appearance", which included this statement:

". . . The undersigned further agrees that the court, after approving the Assurance of Discontinuance of Unlawful Practice, shall retain jurisdiction for the purpose of affording either party further relief upon proper notice to the other party."

The district court, after being advised in the premises, approved the assurance. Eliminating formalities, the order of the court reads:

"The Court, being duly advised in the premises, finds the Assurance of Discontinuance of Unlawful Practice should be approved.

"IT IS THEREFORE ORDERED, ADJUDGED AND DECREED that the Assurance of Discontinuance of Unlawful Practice entered into herein by and between the County Attorney of Sedgwick County, Kansas, and Jim McPherson d/b/a Keystone Reader's Service be approved.

"IT IS FURTHER ORDERED, ADJUDGED AND DECREED that the Respondent pay any and all court costs that are taxed and assessed in this case and in any future related proceedings.

"IT IS FURTHER ORDERED, ADJUDGED AND DECREED that the court shall retain jurisdiction of this case for the purpose of affording either party further relief upon proper notice to the other party.

"DATED this 2nd day of October, 1969."

After the approval of the assurance nothing further occurred until March 11, 1970, when a deputy county attorney filed several pleadings. He first filed an affidavit in contempt stating that appellant had violated several provisions of the assurance. In the affidavit the deputy county attorney prayed that process be issued for appellant to be brought before the court to be proceeded

against for indirect contempt. At the same time, the deputy county attorney filed a "Motion for Citation in Contempt" in which it was also alleged that appellant had violated the terms of the assurance in a number of particulars. A few hours later, on the same day, the deputy county attorney filed an "Accusation in Contempt" in which several of the provisions of the assurance were again set out and acts alleged in violation thereof. The prayer of the accusation asked that McPherson be adjudged guilty of indirect contempt and punished by a fine of $10,000, pursuant to K. S. A. 1971 Supp. 50-611.

On the same day, March 11, two orders of the trial court were entered. One directed appellant to appear before the court on March 20, 1970, to show cause why an accusation should not be filed against him. The second order directed appellant to appear on March 20, 1970, and show cause why he should not be proceeded against for indirect contempt.

On March 20, 1970, a hearing was had wherein appellant admitted that he had failed to do certain acts required of him in the assurance. The trial court found appellant guilty of indirect contempt of court and sentenced him to pay a fine of $10,000, which order was suspended and appellant was put on probation from payment of the fine for a period of one year on condition that he make restitution to all persons whose contracts were cancelled. The court ordered that all contracts between appellant and any other person, which were made in violation of the terms of the assurance, and consummated between the dates of October 2, 1969, and March 20, 1970, be cancelled within ten days and restitution made, except that any person who had so contracted with appellant could reaffirm the contract if desired, but the reaffirmation had to be in writing.

On March 30, 1970, appellant filed a motion seeking to modify the court's order of March 20, 1970. The motion was overruled. On April 17, 1970, the trial court issued an order directing the sheriff to arrest appellant and confine him pending a hearing to determine why his probation should not be revoked. At this point, from our examination of the somewhat confusing record, it appears that appellant filed this appeal and further activity in the trial court ceased. In any event, appellant comes before this court in the position of having been convicted of indirect contempt by the court below.

In substance appellant claims: (1) The trial court lacked jurisdiction to find contempt; (2) the trial court failed to make a finding of what order or injunction of the court appellant was found to have violated or what conduct of appellant was in violation of an order of the court; (3) there was no evidence before the trial court to support its judgment; (4) that improper procedure was followed by the county attorney in an effort to secure compliance with the assurance; and (5), therefore, the trial court lacked authority to order cancellation of contracts.

K. S. A. 1971 Supp. 50-602 declares certain business practices, described in general terms, to be unlawful. Broad investigatory powers are conferred upon the attorney general in sections 50-604 to 50-607, inclusive, and by 50-614, the same authority is granted to a county attorney. Under 50-608 the attorney general, when he has reasonable cause to believe a person is engaging in unlawful practices, is empowered to seek an injunction against the continuation of such practices. After providing for notice and service thereof the section further provides:

". . . The court may make such orders or judgments as may be necessary to prevent the use or employment by a person of any prohibited practices, or which may be necessary to restore to any person in interest any moneys or property, real or personal, which may have been acquired by means of any practice in this act declared to be unlawful, including the appointment of a receiver or the revocation of a license or certificate authorizing that person to engage in business in this state, or both, in cases of substantial and willful violation of this act." (K. S. A. 1971 Supp. 50-608.)

Instead of pursuing a judicial course of action leading to an injunction and other relief provided for in 50-608, the county attorney agreed to accept from the appellant an "Assurance of Discontinuance of Unlawful Practice" provided for by 50-610 which reads:

"In the enforcement of the provisions of this act, the attorney general may accept an assurance of discontinuance of any practice deemed in violation of the provisions of this act from any person engaging in, or who has engaged in, such practices. Any such assurance shall be in writing and shall be filed with and subject to the approval of any district court having venue as provided in section 13 [50-613] of this act. A violation of such assurance with[in] six (6) years of the filing thereof shall constitute prima facie proof of a violation of the provisions of this act. Such assurance of discontinuance shall not be considered an admission of a violation for any purpose."

A civil penalty is provided as a means of compelling compliance with injunctions and orders of the court by the terms of 50-611, which reads:

"A person who violates any court order or injunction issued pursuant to this act shall forfeit and pay to the general fund of the state of Kansas a civil penalty of not more than ten thousand dollars ($10,000), to be fixed by the court. For the purpose of this section, the district court issuing any order or injunction shall retain jurisdiction. In such cases, the attorney general acting in the name of the state may petition for the recovery of civil penalties."

Consideration of the act as a whole indicates that the attorney general or a county attorney may take one of three courses of action, he may pursue injunctive relief to a final judgment under 50-608; he can accept an assurance under 50-610, or he could pursue a course of action which would culminate in a combination of both, that is the acceptance of an assurance coupled with an injunction to provide for compliance therewith.

In the instant case, the county attorney in accepting the assurance agreed not to proceed further with his statutory action, which was described as a "Petition for Injunctive, Civil Penalties and Other Relief." In this connection paragraph two of the assurance reads:

"It now appearing that the Respondent is willing to enter into an agreement to terminate the practices complained of by the County Attorney of Sedgwick County, Kansas, and that the County Attorney of Sedgwick County, Kansas, is willing to accept this Assurance of Discontinuance of Unlawful Practice, pursuant to the Kansas Buyer Protection Act (K. S. A. 50-610), in lieu of proceeding with the statutory action heretofore filed in the District Court of Sedgwick County, Kansas, Case No. C-17497, the Respondent enters into this assurance without admitting that he has violated the provisions of the Buyer Protection Act."

Following paragraph two, the assurance sets out in detail a number of practices which appellant agreed to discontinue and further that appellant agreed to adhere to and comply with all applicable provisions of the "Selling Code for Paid-During-Service Subscription Agencies", which are specifically set forth in the assurance.

Appellant also agreed to pay all court costs assessed in connection with the proceedings.

The final paragraph of the assurance reads:

"Pursuant to the Kansas Buyer Protection Act (K. S. A. 1968 Supp. 50-610), evidence of a violation of this Assurance of Discontinuance of Unlawful Practice shall constitute prima facie proof of violation of the applicable law as cited herein above in any civil action or proceeding hereafter commenced by the Attorney General or any county attorney of the State of Kansas."

The affidavit in contempt, the accusation in contempt, and the motion for citation in contempt are all premised on the assumption

that appellant had violated some order of the court and, hence, he could be compelled to show cause why he should not be proceeded against and adjudged guilty of indirect contempt. The affidavit, the accusation and the motion each set out alleged violations of the assurance, but in no instance is there an allegation that any specific order of the court was violated. In other words, the county attorney proceeded as though the approval of the assurance transformed it from an agreement with appellant into an order of the court. Actually, the only obligation to the court, imposed upon the appellant by the order of approval, was to pay any costs assessed which had been agreed to by appellant in the assurance. In all other respects the assurance was an agreement between the county attorney and appellant as to what henceforth would be unlawful practices in his business. Also, certain standards were set out, which must be met in order that practices would be acceptable.

By the terms of the assurance and in accordance with the provisions of 50-610, evidence of the violation of any of the provisions thereof would constitute prima facie proof of a violation of the act in any civil action or proceeding commenced thereafter. The trouble is that the county attorney, by the terms of the assurance, accepted it in lieu of proceeding with his original injunction action, which he did not reinstate, nor did he seek any other orders of the court upon obtaining evidence of appellant's misdeeds.

The deputy county attorney proceeded to institute contempt proceedings as though an injunction had been granted and was in force. In fact the only order of the court in effect on March 11, 1970, was the approval of the assurance. The only direction of that order, which imposed an obligation on appellant, was the taxing of costs about which there was no complaint. The order of the trial court approved the assurance, but it did not include the terms thereof or adherence thereto by appellant as a part of the order of the court. Perhaps appellant would not have agreed to the assurance had the conditions referred to been included therein.

On March 11, 1970, appellant was actually charged with violations of the assurance. None of the pleadings filed specified any injunction or order of the court which appellant was alleged to have violated. In short, there was no basis for an accusation in contempt at this juncture of the proceedings; hence the court was without jurisdiction.

This is not to say that an injunction compelling adherence could

not be coupled with or entered in conjunction with an order of approval, but no such action was taken in the instant case.

In a comprehensive analysis of the provisions of the act (Vol. 38 J. B. A. K., p. 11, Travers review of "The New Kansas Buyer Protection Act."), Professor Travers points out that the advantage to the state in accepting an assurance is that the burden of establishing conduct proscribed by the act is avoided and that after accepting an assurance the state in suing to enjoin a violation thereof need only show, that the terms of the assurance have been violated to establish a prima facie case, thus shifting to appellant the burden of showing that his conduct was not in violation.

On the other hand, Professor Travers also notes inducements to a defendant to sign an assurance:

". . . First, violation of an injunction will subject a defendant to liability for a civil penalty of $10,000 whereas violation of an assurance will lead only to a suit for an injunction under the circumstances outlined above. Second, the act provides that an assurance 'shall not be considered an admission of a violation for any purpose. . . .'" (Vol. 38 J. B. A. K., p. 57)

The statement of the proceedings (no stenographic transcript was made) at the hearing on March 20, 1970, shows that appellant admitted violations of the assurance in four particulars, but there is no showing that he at any time admitted or conceded that he had violated any order or injunction of the court. Appellant's admissions of violations of the assurance cannot be construed to amount to a plea of guilty to a charge of indirect contempt. His admissions were directed to violations of the assurance; they were not made as answers to a charge of contempt.

Since the appellant was not charged with or shown to be in violation of any order of the court, the contempt conviction cannot stand. Moreover, the proceedings leading to conviction are faulty in several other respects.

Under the provisions of K. S. A. 20-1201 all classes of contempts of court must be proceeded against only as prescribed in K. S. A. Chap. 20, Art. 12. Informalities in procedure are not permissible.

In addressing itself to contempt procedures in *Hartman v. Wolverton*, 125 Kan. 202, 263 Pac. 789, this court said:

"Since contempt of court may be punished by fine and by imprisonment, a person charged with contempt is entitled to know the nature and cause of the accusation against him. The informality in procedure in cases of indirect contempt adverted to in the case of *State v. Cutler*, 13 Kan. 131, is no longer considered permissible (*State v. Anders*, 64 Kan. 742, 68 Pac. 668).

Process to bring the accused before the court must be founded on affidavit showing the contempt, except in cases not material here, and when the accused is brought before the court a written accusation setting forth succinctly and clearly the facts constituting the contempt must be filed. (R. S. 20-1204.) The accused may waive the filing of an accusation by answering the charge contained in the affidavit (*Butler v. Butler*, 82 Kan. 130, 133, 107 Pac. 540), but the authority of the court to punish rests on a written charge in some form showing the contempt. . . ." (p. 205.)

Under the provisions of K. S. A. 20-1205 the taking of testimony and the preservation thereof is mandatory and a requisite of jurisdiction. In this connection it was stated in *In re Gambrell*, 160 Kan. 620, 164 P. 2d 122:

"The statute (G. S. 1935, 20-1205) provides for review of contempt proceedings on appeal. In part it reads:

" 'That the testimony taken on the trial of any accusation of contempt shall be preserved, and any judgment or conviction therefor may be reviewed.'

"In this case the testimony was not preserved, hence the opportunity to have it reviewed on appeal was frustrated. Cases have reached this court, both on appeal and by habeas corpus. Because of the inadequacy of the record in this case the accused was justified in proceeding by habeas corpus. It has been held that habeas corpus by one committed for contempt raises jurisdictional questions only. Contempt is a proceeding somewhat arbitrary at the best, and the absence of essential proceedings in the record constitutes a showing of the lack of jurisdiction." (p. 623.)

In view of what has been said the judgment convicting appellant of indirect contempt is set aside and the cause is remanded to the district court.

It is so ordered.