No. 49,391

UARCO, INCORPORATED, *Appellee,* v. JOHN H. OSBORNE, *Appellant.*

(578 P.2d 266)

Opinion filed May 6, 1978.

*Lee H. Woodard,* of Woodard, Blaylock & Johnson, of Wichita, argued the cause and was on the brief for appellant.

*Ken M. Peterson,* of Morris, Laing, Evans, Brock & Kennedy, of Wichita, argued the cause and was on the brief for appellee.

*Per Curiam:* This is an appeal by defendant-appellant from a contempt action in which John H. Osborne was found to have violated an injunction entered against him October 29, 1976. The injunction was originally granted for a period of two years and prohibited Mr. Osborne from competing with his former employer, Uarco, Inc. Uarco was in the business of selling business forms and Osborne was a salesman employed by the company. The injunction was based on non-competition provisions in an employment agreement entered into by Osborne and Uarco on May 19, 1976. At that time Osborne had been an employee-salesman of Uarco for several years. Osborne's employment was terminated July 12, 1976.

The initial controversy involved the construction and validity of the employment agreement and resulted in the injunction which required Osborne to honor the non-competition provisions therein. Donald R. Newkirk, Master appointed by the court, entered a "Report of Master" after hearing testimony for two days and examining numerous documents.

Paragraph 9 of the employment agreement which was in force at the time of Osborne's termination provided:

"9.   For a period of two years following the termination of his employment for any reason whatsoever (or if this period shall be unenforceable by law, then for such period as shall be enforceable), Salesman agrees that he will not contact, with a view toward selling any product competitive with any product sold or proposed to be sold by Company at the time of the termination of Salesman's employment, any person, firm, association or corporation,

(a)   to which Salesman sold any product of Company,

    (b)  which Salesman solicited, contacted or otherwise dealt with on behalf of Company, or

    (c)  which Salesman knew or was otherwise aware was a customer of Company,

during the year preceding the termination of Salesman's employment. Salesman agrees that he will not directly or indirectly make any such contact either for the benefit of himself or for the benefit of any other person, firm, association or corporation, and further that he will not in any manner assist any person, firm, association or corporation to make any such contact."

The Master found in his report that the salesman's agreement was enforceable, and accordingly, Osborne was prohibited for two years from contacting Uarco's customers who came within the terms of the agreement.

The decision of the Master was upheld by the District Court of Sedgwick County, Kansas, when Judge Howard C. Kline expressly adopted the report in its entirety, with the exception that Osborne was permitted to have contacts in a "purely open bid situation." The journal entry entered by the court read, in part, as follows:

"6.  The defendant should be enjoined from the further violation of paragraphs 9(a) and 9(b) of the employment contract of May 19, 1976, except that defendant shall not be enjoined from selling to those UARCO customers—whether private or governmental—in situations where such customers desire to purchase business forms in a purely 'open bid situation.' The term 'open bid situation' is defined by the Court to mean 'that situation where the UARCO customer invites various suppliers to submit a quotation based upon the customer's specifications, and the supplier is chosen by the customer strictly on lowest price.' Defendant is expressly enjoined from selling business forms to any UARCO customer as defined in paragraphs 9(a) and 9(b) of the employment contract in any non-open bid situation."

The district court order of injunction was never appealed from and appellant is thus precluded from arguing the merits of that original proceeding in this appeal from a judgment finding him in contempt. This court has repeatedly held:

".  .  .  that once parties accused of contempt are properly before the court, the merits of the original suit are not involved, and the sole question for determination is whether the permanent injunction order and judgment has been violated by them." *Bongers v. Madrigal,* 1 Kan. App. 2d 198, 200, 563 P.2d 515 (1977), citing *Horn v. Seeger,* 174 Kan. 194, 255 P.2d 997 (1953) and *City of Wichita v. Wright,* 169 Kan. 268, 219 P.2d 350 (1950). See also, *Roush v. Hodge,* 193 Kan. 473, 394 P.2d 101 (1964).

On May 6, 1977, Uarco commenced proceedings, from whence this appeal developed, claiming that Osborne was making con-

tacts with Uarco customers in violation of the injunction. Osborne was accused of making prohibited contacts with six Uarco customers. The six companies were: Fox-Vliet Drug Company, T.I.M.E. Services, Inc., Developer Services, Inc., Northcutt Truck and Trailer Sales, Fairbank Equipment, and Farmers Co-op Grain Company, Haven, Kansas.

The factual issues involved, as determined by the pretrial order, were: (1) whether Mr. Osborne sold products to the six Uarco customers during the year preceding his termination; (2) whether Mr. Osborne had any contact with those same six Uarco customers after October 29, 1976, the date of the injunction; and (3) if Mr. Osborne had made contacts after October 29, 1976, whether said contacts fit within the "pure open bid" exception of the injunction. The mixed issues of law and fact, in the pretrial order, were (1) whether Mr. Osborne violated the injunction and (2), if he had, what remedies were available to Uarco and the court. The trial court found all three factual issues in favor of Uarco, that Osborne had violated the injunction and then rendered judgment and sanctions against Osborne.

In appellant's first point on appeal he asserts that this court should interpret the "open bid exception" in the original injunction order and should determine whether the same applied to certain sales the trial court found were made to the six Uarco customers. However, in his brief and in argument before this court appellant readily conceded that he had violated the terms of the injunction as to three of the customers in question. In appellant's brief he states:

"Counsel for Mr. Osborne conceeds [sic] that the evidence shows there was one isolated sale in violation of the injunction to Northcutt Truck and Trailer Sales, and another such sale to Fairbank Equipment, and a third such sale to Farmers Co-op Grain Company of Haven. No attempt will be made to evade the responsibility for these sales and none was made at the trial of this contempt action. No excuse can be made for Mr. Osborne with respect to these sales and the only mitigating circumstances are that sales to these customers were not continuous and, in fact, relatively small. Of course, this cannot excuse Mr. Osborne's conduct and he must openly acknowledge his responsibility with respect to the sales and he understands that he must accept the consequences of his conduct."

While the trial court found over 100 violations of the injunction, this admission in and of itself is sufficient to sustain the finding by the trial court that appellant was in violation of the injunction and guilty of contempt. Appellant's first point, therefore, is totally without merit.

The trial court, having found defendant in contempt of court for violating the injunction, entered the following orders:

1. Granted judgment to Uarco in the sum of $9,110.31 for its attorney's fees and actual out-of-pocket expenses.

2. Extended the original injunction for an additional 190 days.

3. Assessed a $10,000.00 fine against the defendant, but held payment of the same in abeyance pending future compliance with the injunction. It appears that if defendant did not thereafter violate the injunction the trial court would probably suspend or cancel payment of all or a substantial portion of the fine.

Defendant's second point on appeal attacks the orders of the court on several grounds, all of which basically assert that the court abused its discretion.

The broad nature of the court's power is demonstrated by the statute itself:

"Disobedience of any restraining order or injunction may, in addition to other appropriate remedies, or damages, be punished as a contempt." K.S.A. 60-909.

In a recent decision of the Kansas Court of Appeals the broad powers of the trial court were considered:

"Where a party has acted in willful and deliberate disregard of reasonable and necessary orders of the court, the application of a stringent sanction is fully justified and should not be disturbed." *Bongers v. Madrigal*, supra, at 202, citing *Williams v. Consolidated Investors, Inc.*, 205 Kan. 728, 472 P.2d 248 (1970); and *Ronnau v. Caravan International Corporation*, 205 Kan. 154, 468 P.2d 118 (1970).

We find nothing to justify a conclusion that the trial court abused its discretion in the judgment and sanctions imposed against the defendant.

The judgment is affirmed.