No. 77,549

STATE OF KANSAS, *Appellee,* v. DERYCK JENKINS, *Defendant.*
JOSEPH D. JOHNSON, *Respondent in Contempt Proceedings,*
*Appellant.*

(950 P.2d 1338)

Opinion filed
December 12, 1997.

*Daniel E. Monnat,* of Monnat & Spurrier, Chartered, of Wichita, argued the cause and was on the brief for appellant.

*Eliehue Brunson,* assistant attorney general, argued the cause, and *Christopher F. Burger* and *Hsingkan Chiang,* assistant attorneys general, and *Carla J. Stovall,* attorney general, were on the brief for appellee.

The opinion of the court was delivered by

SIX, J.: This is a first impression attorney contempt of court action. Joseph D. Johnson appeals his fine of $550 imposed by the district court. Johnson was sanctioned for (1) his failure to appear at a previously scheduled preliminary hearing, (2) his failure to give notice to other counsel or the court that he would not be present, and (3) his tardy appearance at the re-scheduled hearing.

We exercised our jurisdiction by transferring the case from the Court of Appeals under K.S.A. 20-3018(c).

Johnson's sanctions were entered under what the district court characterized as its inherent power, not under K.S.A. 20-1201 *et seq.*, the statutory contempt procedure. Our question is whether the orders of the district court should be affirmed, modified, or reversed.

A district court has the inherent power to control an attorney who is either a "no-show," tardy, or both. If the district court imposes sanctions for contempt of court, the procedure under K.S.A. 20-1201 *et seq.* regulates that power. No inherent power to punish for contempt exists independent of K.S.A. 20-1201 *et seq.* We hold that Johnson's actions were contemptuous and that his contempt was direct. We reverse the attorney fees assessment; thus, the monetary sanction is reduced to $350. Johnson had no notice he would be subject to an assessment for attorney fees.

## FACTS

A multi-count criminal complaint was filed against Deryck J. Jenkins and a codefendant. Jenkins was released on bond. Johnson, as Jenkins' retained attorney, entered his appearance. The codefendant had separate counsel appointed from the public defender's office. Jenkins' preliminary hearing was scheduled for May 2, 1996. At the request of defense counsel, both preliminary hearings were rescheduled for June 24, 1996. Although Johnson appeared for the hearing, his client did not. Jenkins' bond was forfeited and an arrest warrant issued. However, Jenkins appeared later that day, and the warrant was recalled. Both Johnson and Jenkins were advised that the preliminary hearing for both defendants was reset for July 2, 1996, at 10:30 a.m. before Judge James P. Buchele. Jenkins, the

codefendant, her counsel, the assistant district attorney, and the subpoenaed witnesses (seven police officers) appeared for the preliminary hearing at the appointed time. Johnson did not. Johnson had not informed the judge, his client, or other counsel either that he would be absent or where he would be.

Johnson's office, when contacted, advised the court that he was attending a hearing on another case before Judge Nancy E. Parrish (Division 14). Everyone waited for Johnson to appear for Jenkins' preliminary hearing. At 11:45 a.m., according to Judge Buchele, an administrative assistant gave notice to Johnson at Division 14 that Jenkins' preliminary hearing would begin at 1:30 p.m. Although everyone else appeared at 1:30 p.m., Johnson did not arrive until 1:50 p.m. The hearing commenced when Johnson arrived. After the hearing, an on-the-record exchange between Judge Buchele and Johnson concerning Johnson's conduct took place.

On July 19, 1996, Judge Buchele filed an order imposing sanctions. Johnson was required to pay the clerk of the district court $550 as compensation for the 2 hours the police officers and attorneys spent waiting for him on July 2 (seven police officer witnesses, each at $25 per hour, and an assistant district attorney and a public defender, each at $50 per hour). The distribution was $350 to the City of Topeka, $100 to Shawnee County, and $100 to the State Board of Indigents' Defense Services.

The order recited the events of July 2, 1996, and reflected that Judge Buchele had verified: (1) on July 1, 1996, Johnson had requested the date and time for the conflicting hearing before Judge Parrish; (2) Johnson did not advise Judge Parrish of the conflict; (3) the hearing before Judge Parrish at 10:30 a.m. lasted only 15 to 20 minutes; (4) by 11 a.m., Johnson had been told that everyone was waiting on him for the preliminary hearing; and (5) after being told that the preliminary hearing would begin at 1:30 p.m., Johnson left Topeka shortly before noon to attend a meeting in Lawrence. He did not tell anyone connected with Jenkins' case that he would be late for the rescheduled 1:30 p.m. preliminary hearing.

Johnson moved for a due process hearing or, alternatively, that the sanctions be set aside as invalid. Judge Buchele denied the motion. The order noted that Johnson had requested a hearing

instanter, which he received, and that he had waived any further due process rights at the district court level.

## DISCUSSION

In addressing Johnson's claims that the district court orders violated his K.S.A. 20-1201 *et seq.* statutory and constitutional due process rights, we will reference: (a) the nature of this proceeding (including standard of review); (b) applicable statutory requirements; (c) civil or criminal contempt; (d) due process requirements; (e) direct or indirect contempt; (f) jurisdiction; (g) waiver of statutory or due process requirements; (h) recusal; (i) sufficiency of the evidence; (j) propriety of the attorney fees assessment; and (k) abuse of discretion.

### Nature of the Proceeding

Johnson argues that this matter should be analyzed as a contempt of court proceeding. We agree. He contends that "the sanction involved here was not possible under the provisions of K.S.A. 20-1201 *et seq.* We disagree. Neither the district court's order imposing sanctions (first order) nor the follow-up order denying Johnson's motion to set aside sanctions (second order) contains any express finding that Johnson was in contempt of court. However, those orders fined Johnson for his tardiness, his earlier failure to appear at the originally scheduled time, and his failure to advise the court of his whereabouts or of his conflicting hearing in another case. The district court's second order said in part: *"The sanctions imposed were not made pursuant to K.S.A. 20-1201, but were based upon the inherent power of the Court to uphold the integrity of the Court['s] scheduling order and the judicial process."* (Emphasis added). Therein lies the crux of our issue. Initially, we must decide how to treat the district court's rejection of K.S.A. 20-1201 *et seq.* in processing Johnson's actions.

Despite the characterization of its order, a district judge's description of his or her own action does not control the classification of the action. *State v. Whorton*, 225 Kan. 251, 254, 589 P.2d 610 (1979). Judge Buchele sanctioned Johnson for behavior the judge believed to be "disruptive and disrespectful to the Court and disrespectful to everyone else involved," constituting an "intentional,

arrogant, and flagrant disregard of the Court's schedule." The absence of the word "contempt" from the order does not change the nature of the action, if the facts call for contempt.

Codification of contempt of court procedures occurred early in this state's history. *Johnson v. Johnson*, 11 Kan. App. 2d 317, 319, 721 P.2d 290 (1986); see, *e.g.*, L. 1897, ch. 106, § 1, now K.S.A. 20-1201. We have acknowledged the codification in resolving earlier cases. See *State v. McPherson*, 208 Kan. 511, 517, 493 P.2d 228 (1972) ("Under the provisions of K.S.A. 20-1201 all classes of contempts of court must be proceeded against only as prescribed in K.S.A. Chap. 20, Art. 12. Informalities in procedure are not permissible.").

Does a district judge have the inherent power to punish for contempt of court as an alternative to K.S.A. 20-1201 *et seq.*? The consistency of our cases over time, emphasizing legislative regulation of contempt, signals the answer. The power to punish for contempt of court does not arise from legislative action, but is inherent in the court itself. *Cyr v. Cyr*, 249 Kan. 94, 99, 815 P.2d 97 (1991). However, the practical effect is that no inherent power to punish for contempt exists in the district court independent of legislative regulation under K.S.A. 20-1201 *et seq.* If we were to hold otherwise, we would not only trespass on precedent but also endorse an unlimited inherent powers exception that could override regulation under K.S.A. 20-1201 *et seq.*, thus creating an unbridled power in individual judges to impose punishment.

We now turn to Johnson's actions. Kansas courts have regarded a witness' or party's unauthorized absence from a trial or hearing as contempt of court. See *State v. Anders*, 64 Kan. 742, 68 Pac. 668 (1902) (reversing judgment of conviction of contempt for failure to appear to testify as a subpoenaed witness at a trial); *State v. Miller*, 15 Kan. App. 2d 566, 572, 811 P.2d 1256 (1991) ("Furthermore, the court could also find the defendants in contempt of court for failure to appear when ordered. K.S.A. 20-1201 *et seq.*").

Unauthorized absence and tardiness are the sanctioned activities here. Appellate courts in other jurisdictions have treated absence or tardiness as contempt of court. See Annot., Attorney's Failure to Attend Court, or Tardiness, as Contempt, 13 A.L.R.4th 122. We

consider Johnson's fine to have been imposed in a contempt proceeding.

For an informative outline to assist any judge when confronted with a possible contempt situation, see 1 ABA Standards for Criminal Justice, Use of the Contempt Power, Standards 6-4.1, 6-4.5 (2d ed. 1980).

In a unique action of this type, we have a dual standard of review. We apply a de novo review to determine whether the alleged conduct is contemptuous. See *State v. Pondexter*, 225 Kan. 425, 429, 590 P.2d 1074 (1979). We apply an abuse of discretion standard in reviewing the sanctions imposed. See *Edmiston v. First Nat'l Bank of Holcomb*, 242 Kan. 13, 15, 744 P.2d 829 (1987).

### Applicable Statutory Requirements

K.S.A. 20-1201 divides contempts of court into two classes, direct and indirect, to be "proceeded against only as hereinafter prescribed."

K.S.A. 20-1202 defines direct and indirect contempts: "[C]ontempts committed during the sitting of the court or of a judge at chambers, in its or his presence, are direct contempts. All others are indirect contempts."

K.S.A. 20-1203, the direct contempt statute, provides:

"[A] direct contempt may be punished summarily, without written accusation against the person arraigned, but if the court or judge in chambers shall adjudge him guilty thereof a judgment shall be entered of record, in which shall be specified the conduct constituting such contempt, with a statement of whatever defense or extenuation the accused offered thereto, and the sentence of the court thereon."

We discussed the distinction between direct and indirect contempt in *Pondexter:*

"To constitute direct criminal contempt of a court there must be some open and intended disrespect to the judge or the court officers in the presence of the judge, or such conduct in or near the court as to interrupt or interfere with court proceedings then in progress." 225 Kan. at 429.

We said:

"[W]here direct criminal contempt occurs when the contemner is either a party or an attorney for a party in a criminal trial proceeding any disruptive, recalcitrant

and disagreeable act should be punished summarily to forestall additional contemptuous conduct." 225 Kan. at 433.

Different statutory procedures apply, depending on whether the contempt is direct or indirect. If Johnson's alleged conduct is treated as a direct contempt, then K.S.A. 20-1203 applies. K.S.A. 20-1203 provides for summary punishment, but requires that a written judgment be entered, specifying the contemptuous conduct, defense or extenuating circumstances, and the sentence imposed. Failure to comply with 20-1203 is jurisdictional. See *In re Gambrell*, 160 Kan. 620, 623, 164 P.2d 122 (1945), *reh. denied* 161 Kan. 4, 165 P.2d 760 (1946). The first order entered by Judge Buchele describes Johnson's conduct, the defenses he offered, and the fine imposed.

Direct contempt orders have been held void for either failure to specify the conduct constituting the contempt or to state any defense or extenuation offered by the accused. See, *e.g., State v. Flanagan*, 19 Kan. App. 2d 528, 533, 873 P.2d 195 (1994).

If we were to characterize Johnson's alleged conduct as an indirect contempt, then K.S.A. 1996 Supp. 20-1204a would apply. "The procedure for holding a party in indirect contempt . . . is set forth by statute and must be strictly construed against the movant." *Cyr*, 249 Kan. 94, Syl. ¶ 5. Under K.S.A. 1996 Supp. 20-1204a(a), a motion requesting an order to appear and show cause why the contemner should not be held in contempt, accompanied by an affidavit setting forth the facts constituting the alleged violation, must be filed. The sheriff must serve the order on the alleged contemner, along with a copy of the affidavit. The order must state the time and place of the hearing. K.S.A. 1996 Supp. 20-1204a(b). Johnson's contempt was not indirect.

K.S.A. 20-1205 provides for appeals of judgments of conviction of contempt and requires that "testimony taken on the trial of any accusation of contempt shall be preserved." See *McPherson*, 208 Kan. at 518 ("Under the provisions of K.S.A. 20-1205 the taking of testimony and the preservation thereof is mandatory and a requisite of jurisdiction."). The record contains the transcript of the verbal exchange between Judge Buchele and Johnson. We consider

this verbal exchange an instanter contempt hearing, which Johnson requested.

### Civil vs. Criminal Contempt

The distinctions between civil and criminal contempt have been addressed by both Kansas appellate courts.

" 'Civil contempt is the failure to do something ordered by the court for the benefit or advantage of another party to the proceeding.' [Citation omitted.] Criminal contempt, by contrast, is 'conduct directed against the dignity and authority of a court or a judge acting judicially, with punitive judgment to be imposed in vindication; its essence is that the conduct obstructs or tends to obstruct the administration of justice.' [Citation omitted.]" *Krogen v. Collins*, 21 Kan. App. 2d 723, 726, 907 P.2d 909 (1995).

Civil contempt is a remedial or corrective action meant to coerce a party into action. The party in contempt can be confined until the court-ordered action is performed. *Goetz v. Goetz*, 181 Kan. 128, 137, 309 P.2d 655 (1957); see *State v. Davenport*, 22 Kan. App. 2d 683, 920 P.2d 475, *rev. denied* 260 Kan 933 (1996) (defendant held in civil contempt for refusing to testify under a plea agreement and ordered imprisoned until he agreed to testify). The procedural distinction between civil and criminal contempt has been eliminated by amendments to K.S.A. 20-1201 *et seq*. See *Electronic Realty Assocs., Inc. v. Gomez*, 18 Kan. App. 2d 122, 126-27, 848 P.2d 458 (1993) (The 1978 legislature repealed K.S.A. 20-1204 [Weeks] and K.S.A. 20-1207 [Weeks], L. 1978, ch. 114, § 2, and enacted K.S.A. 20-1204a.).

Johnson's tardiness at the July 2, 1996, preliminary hearing obstructed the administration of justice. The district court lost valuable time. Because no one knew what time Johnson would appear, the court, parties, other attorneys, and subpoenaed witnesses had to wait until the 10:30 a.m. hearing was rescheduled. The rescheduled hearing did not commence until 1:50 p.m., when Johnson finally arrived.

We agree with the language in *Arthur v. Superior Court*, 62 Cal. 2d 404, 411, 42 Cal. Rptr. 441, 398 P.2d 777 (1965):

"When an attorney fails to appear in court with his client, particularly in a criminal matter, the wheels of justice must temporarily grind to a halt. The client cannot be penalized, nor can the court proceed in the absence of counsel. Having

allocated time for this case, the court is seldom able to substitute other matters. Thus, the entire administration of justice falters."

Johnson contends that his alleged contempt was indirect and the sanction was criminal in nature. We find that it is conceptually not clear whether Johnson's sanction falls within a civil or a criminal classification. The fine could be considered compensatory (reimbursing the State, county, and city for lost witness and attorney time). However, its nonremedial nature could fit within the criminal contempt framework. The fine is unconditional and cannot be purged by any type of compliance. One commentator has said: "Perhaps the only certainty in criminal contempt is that it is a theoretical and procedural morass." Patterson, *Criminal Contempt: A Proposal for Reform Providing "The Least Possible Power Adequate to the End Proposed,"* 17 S. D. L. Rev. 41, 62 (1972). Another writer opined: "Few legal concepts have bedeviled courts, judges, lawyers and legal commentators more than contempt of court." Martineau, *Contempt of Court: Eliminating the Confusion Between Civil and Criminal Contempt,* 50 U. Cin. L. Rev. 677 (1981). Although the criminal-civil distinction may be paramount in future cases, we find it unnecessary to label Johnson's contempt proceeding as criminal or civil. The more significant classification here is whether the contempt was direct or indirect.

Additional constitutional considerations come into play when serious criminal contempt penalties are imposed. See *Mine Workers v. Bagwell*, 512 U.S. 821, 129 L. Ed. 2d 642, 114 S. Ct. 2552 (1994) (contempt fines of $52 million levied against union for violation of labor injunction held to be criminal fines that constitutionally could be imposed only through a jury trial). When a serious criminal contempt is not involved, however, "the traditional distinction between civil and criminal contempt proceedings does not pertain." 512 U.S. at 827 n. 2. As the Court noted: "Numerous scholars have criticized as unworkable the traditional distinction between civil and criminal contempt." 512 U.S. at 827 n. 3. Several law review articles are cited, including Dudley, *Getting Beyond the Civil/ Criminal Distinction: A New Approach to Regulation of Indirect Contempts*, 79 Va. L. Rev. 1025 (1993), which contains a good discussion of the development of contempt.

Here, the sanction, a $550 fine, classifies Johnson's contempt as less than serious. See *Bagwell*, 512 U.S. at 837 n. 5.

## Due Process Requirements

In *In re Oliver*, 333 U.S. 257, 273, 92 L. Ed. 682, 68 S. Ct. 499 (1948), Oliver was jailed for contempt of court in a secret proceeding on a charge of giving false and evasive testimony before a one judge-grand jury. The issue was whether an accused can be tried and convicted of contempt in secret. Oliver filed a habeas corpus action, and it was held such summary commitment constituted a denial of due process. In *Gompers v. Bucks Stove & Range Co.*, 221 U.S. 418, 444, 55 L. Ed. 797, 31 S. Ct. 492 (1911), Gompers was held in contempt and imprisoned in jail for 12 months for publicizing the union's side of a labor dispute in violation of a preliminary injunction; the judgment was reversed. Johnson argues that under *Oliver* and *Gompers*, he was denied due process because Judge Buchele subjected him to a summary proceeding without any advance notice. Neither *Oliver*, a star chamber case, nor *Gompers*, involving indirect contempt, are factually similar to Johnson's situation.

Johnson also complains that he was punished after the judge conducted an ex parte investigation. He reasons that had he been afforded the proper due process he could have: (1) been adequately prepared to show the circumstances surrounding his absence and tardiness; (2) had the opportunity to confront the evidence gathered in Judge Buchele's ex parte investigation; (3) exercised his right against self-incrimination; (4) exercised his right to counsel; (5) presented oral or written argument; and (6) been adjudged under the "beyond a reasonable doubt" standard of proof.

Johnson's due process contentions are analyzed against the factual background as reflected in the record. Judge Buchele was already aware that at 2 p.m. on July 1, 1996, Johnson had scheduled the conflicting hearing before Judge Parrish. Judge Buchele also knew that Johnson had not told the assignment judge (Judge Marla Luckert) about the conflicting hearing. Judge Buchele confronted Johnson at the contempt hearing with the results of his investiga-

tion. Johnson was given the opportunity, which he took, to respond to the results of that investigation. He insisted on and was given the opportunity to explain and offer any extenuating circumstances. See *Arthur*, 62 Cal. 2d at 409:

"Where counsel fails to appear, however, the offensive conduct, to wit, the absence, occurs in the presence of the court. Thus, when an absent attorney reappears in the courtroom, due process should be satisfied if the judge confronts him with the charge and offers him a reasonable opportunity to explain."

Johnson was not denied due process.

### Direct vs. Indirect Contempt

In *Anders*, 64 Kan. at 746, we held that a witness' failure to appear at trial under a subpoena was in the nature of an indirect contempt, in that the disobedience to attend was not committed in the presence of the court. Johnson argues that his alleged conduct should be characterized as an indirect contempt, in that his absence and tardiness did not occur in the court's presence. Johnson also asserts that there was no need for immediate punishment or a summary disposition.

Jurisdictions are divided as to the classification label to place on an attorney's absence or tardiness. Three contempt classifications have evolved—indirect, direct, and hybrid. The majority position seems to support indirect contempt. See, *e.g.*, *In re Davis*, 77 Ohio App. 3d 257, 265-67, 602 N.E.2d 270 (1991).

The following authorities favor either direct or hybrid classifications:

Direct Contempt: See, *e.g.*, *In re Contempt of Potter*, 207 Neb. 769, 775, 301 N.W.2d 560 (1981) ("Where the attorney, although notified by the court to appear at a specific time, fails to do so and does not offer an excuse, all matters relevant to the determination of contempt happen in court"; contempt finding affirmed for attorney's tardiness and failure to explain.); *Zeigler v. State*, 806 P.2d 1131 (Okla. Crim. 1991) (attorney's failure to appear at first day of criminal trial due to alleged conflict with another case, coupled with his unsatisfactory explanation for his failure to proceed with trial after being ordered to, treated as a direct contempt).

Hybrid Contempt: See, *e.g., Matter of Williams*, 120 Idaho 473, 478, 817 P.2d 139 (1991) ("We find the hybrid form of direct contempt argument persuasive."); *Curtis v. State*, 625 N.E.2d 496, 498 (Ind. App. 1993) ("We find the hybrid approach to be fair and sensible, and to comport with the requirements of due process."); *In Re Yengo*, 84 N.J. 111, 417 A.2d 533 (1980), *cert. denied* 449 U.S. 1124 (1981); and *Roselle v. State*, 509 P.2d 486, 488 (Okla. Crim. 1973), *overruled on other grounds Gilbert v. State*, 648 P.2d 1226, 1231 (Okla. Crim. 1982). See also cases cited at 13 A.L.R.4th 122, §§ 9-11.

Recent cases continue to show this split of authority. See, *e.g., In re Marriage of Johnson*, 939 P.2d 479 (Colo. App. 1997) (reversal of summary punishment for direct contempt against attorney who telephoned judge long distance from Florida at time of scheduled court appearance after request for continuance was denied; attorney's conduct showed, at best, indirect contempt); *In re Billy L. Spruell*, 227 Ga. App. 324, 489 S.E.2d 48 (1997) (attorney who accepted DUI case 4 days before trial, but left on vacation to remote area before knowing whether request for continuance had been granted or denied, found guilty of indirect criminal contempt); *Curtis*, 625 N.E.2d at 498 (hybrid contempt case in which finding of direct contempt against prosecutor who failed to appear for scheduled trial date reversed; prosecutor's explanation that the trial did not appear on his calendar was not inadequate on its face, thus entitling him to indirect contempt proceeding procedural safeguards).

We have reviewed the rationale for each of the three contempt concepts against the background of our own case law. We favor the hybrid contempt approach, which we adopt and apply here. *Yengo*, 84 N.J. 111, discusses the three approaches and sets out the reasoning favoring the hybrid label.

In *Yengo*, defense counsel Yengo failed to appear during a complex criminal conspiracy jury trial. Burns, an associate from Yengo's office who was unfamiliar with the case, appeared. The judge asked Burns about Yengo's absence. Burns said that Yengo was out of the country and had asked Burns to take his place while he was gone. The judge spoke with Yengo's daughter, who said that her father

had taken a 4-day vacation in Bermuda. The judge sent Yengo a telegram directing him to appear on the next trial date after his expected return. Yengo appeared, explaining that he had been in Bermuda on business and had not told the court because he did not know he would be going until late on the day before departure. The judge cited Yengo for contempt in the presence of the court and later imposed a fine of $500. On appeal, Yengo argued that his offense should have been treated as an indirect contempt and he had the right to a jury trial before another judge. The New Jersey Supreme Court affirmed the trial court, reasoning:

> "We conclude that the mere unexplained absence of an attorney is a hybrid. [Citations omitted.] . . . The characterization of the contempt as direct or indirect should be deferred until after the attorney has an opportunity to explain his absence.
>
> "If there is an adequate explanation, the matter should proceed no further. However, if the attorney refuses to explain, the judge may treat the offense as a direct contempt. [Citation omitted.] Both the absence and the refusal are in the presence of the judge, who may determine the matter summarily. Similarly if the attorney offers an insulting, frivolous, or clearly inadequate explanation, both elements of the offense are in the presence of the judge, who may treat the matter as a direct contempt. [Citation omitted.] Of equal importance the refusal to explain or an offensive explanation creates the need in the court to deal immediately with the matter. [Citation omitted.] The need for immediate adjudication and punishment outweighs the procedural safeguards that would ensure from referring the matter to another judge. In both instances, the attorney has a right to a hearing, albeit before the offended judge." 84 N.J. at 126-27.

Johnson's absence from Judge Buchele's courtroom from 10:30 a.m. to 1:50 p.m., and his late appearance occurred in the court's presence. Also, his failure to advise Judge Buchele of his whereabouts on July 2, 1996, and his unsatisfactory explanation for his absence and tardiness occurred in the court's presence. During the instanter contempt hearing, Johnson explained that he had scheduled the conflicting hearing before Judge Parrish because cases set for preliminary hearings were usually called late, after cases involving waivers or pleas were taken. Johnson apparently thought the hearing before Judge Parrish would conclude before the Jenkins preliminary hearing started. He admitted not informing Judge Buchele of either his conflicting hearing or departure for

Lawrence. Both Johnson's absence and his explanation for his absence were facts that Judge Buchele had first-hand knowledge of at the time of the occurrence. Under the hybrid approach, Johnson's conduct is direct contempt.

Johnson's only excuse for his actions was that he believed other attorneys had gotten away with being late under similar circumstances, and he felt he was being singled out unfairly. Johnson stated: "I will ride you [Judge Buchele] like a horse to make sure everybody else gets the same treatment and I'll have my staff up here every day watching to see who is late and who has been sanctioned." (During our oral argument counsel for Johnson apologized for Johnson's remarks.) Johnson was challenging the district court's authority to sanction him. Immediate action was needed, particularly in view of Johnson's attitude toward the district court. Johnson needed to be made aware of the importance of prompt appearances at future hearings. Otherwise, there is an entire breakdown of the criminal justice process. See *United States v. Wilson*, 421 U.S. 309, 319, 44 L. Ed. 2d 186, 95 S. Ct. 1802 (1975).

### Jurisdiction

Johnson argues that the district court had no jurisdiction to sanction him for indirect criminal contempt. He contends that there is no procedure for an indirect criminal contempt sanction in a criminal case, citing K.S.A. 1996 Supp. 20-1204a(a), which begins: "When an order in a civil action has been entered . . . ." Our determination that Johnson was in direct contempt disposes of his jurisdictional argument. However, absence of a reference in K.S.A. 1996 Supp. 20-1204a(a) to criminal cases does not negate jurisdiction over an indirect contempt arising in a criminal case.

### Waiver of Statutory and Due Process Requirements

The district court's second order says that Johnson "waived any rights to further proceedings" by insisting on a hearing instanter following the completion of the preliminary hearing on July 2, 1996. This order recites that three times, the district court offered Johnson a separately scheduled sanctions hearing, but Johnson continued to insist on the hearing instanter. The transcript of the exchange between Judge Buchele and Johnson following the pre-

liminary hearing supports the order's recitation. Judge Buchele told Johnson at the beginning of the exchange that he would be sending Johnson "a letter on this." After being offered a separate hearing, Johnson stated: "I want to be heard now, since we've got a record. I have a right to be heard." Judge Buchele then advised Johnson, "You'll have your hearing right now, then." The State argues that Johnson waived any due process rights by insisting on the contempt hearing instanter. Because Johnson's actions were in direct contempt, the 20-1204a requirements are not applicable.

Johnson argues that any purported waiver was uninformed and invalid. He suggests that Judge Buchele should have confirmed with him that he was knowingly and intelligently waiving his rights to any further hearing, including his right to counsel. Johnson also contends that he did not waive the right to contest the evidence obtained ex parte by Judge Buchele and used to impose the sanctions against him. Johnson relies on *State v. Buckland*, 245 Kan. 132, 138, 777 P.2d 745 (1989). *Buckland* considered whether a pro se criminal defendant had knowingly and intelligently waived his right to counsel. *Buckland* is distinguishable. Johnson, an attorney, was fined for a less than serious contempt. Unlike *Buckland,* no incarceration was threatened or imposed.

Johnson cites *United States v. Johnson*, 659 F.2d 415 (4th Cir. 1981), and *Emerick v. Emerick*, 28 Conn. App. 794, 613 A.2d 1351, *cert. for appeal denied* 224 Conn. 915 (1992), for the proposition that the district court's failure to advise him of the right to counsel requires reversal of the contempt conviction. Under the applicable law in *Johnson* and *Emerick,* those contemners faced the possibility of incarceration if found in contempt. Johnson's reliance on *Johnson* and *Emerick* is misplaced. Judge Buchele announced that he intended to fine Johnson for his absence and tardiness, not incarcerate him.

At the contempt hearing, Judge Buchele told Johnson, "I intend to sanction you for the costs of all these officers waiting on you between ten and two." Johnson responded, "That's fine," and later finished with, "You send me the bill and I'll see to it, if I choose. If I don't, I'll appeal it. That's the end of that." Johnson knew that Judge Buchele would fine him for the time lost waiting for him at

the preliminary hearing. Johnson was not interested in further hearings on the matter at the district court level.

The fine that Judge Buchele imposed went beyond what Johnson was told the fine would include. Johnson was not informed of any ceiling amount for the fine. A fine of $550 could be considered sizeable, under the circumstances. Only the least possible power adequate to the end proposed should be used in contempt cases. *Wilson*, 421 U.S. at 319. However, our reading of the transcript suggests that during the contempt hearing, Johnson was not concerned about the amount of the fine. Johnson has failed to cite any authority that he is entitled to be told in advance the ceiling amount of any fine. See *Zeigler*, 806 P.2d at 1134. K.S.A. 20-1201 *et seq.* contains no requirement that Johnson be given such advance notice. We impose no such requirement.

## Sufficiency of the Evidence

Johnson argues that the record fails to show his absence at the preliminary hearing in the morning and tardiness in the afternoon were intentional. He compares himself to the oversleeping attorney in *In re James*, 307 Pa. Super. 570, 453 A.2d 1033 (1982). We disagree. The record shows that Johnson's actions on July 2, 1996, were intentional. He purposely scheduled the conflicting hearing in Division 14 (Judge Parrish) without notifying anyone in Division 12 (Judge Buchele) ahead of time. He attended the Division 14 hearing, knowing that the Division 12 preliminary hearing was scheduled for the same time. He took the chance that his matter before Judge Parrish would conclude before the preliminary hearing started. He made no effort either to contact Judge Buchele during the morning of July 2, 1996, or keep Division 12 posted on his status. He left for an out-of-town meeting shortly before noon, knowing that the preliminary hearing had been re-scheduled for 1:30 p.m. He showed up late for that hearing. Judge Buchele's first order said:

"While counsel sometimes are late and occasionally have conflicts which necessitate last minute rescheduling, and counsel sometimes confuse or forget court dates, in the fifteen years the Court has been a judge in this judicial district there has never been such an intentional, arrogant and flagrant disregard of the Court's schedules as that set forth above. Not only did Mr. Johnson apparently assume

that his schedule was paramount to everyone else's involved in this hearing, including the Court's, but he made no attempt to give notice or to communicate with anyone his whereabouts the morning of July 2, 1996 and compounded the matter by going to Lawrence when it was evident that it would make him late for the rescheduled hearing."

There is ample evidence in the record to support a determination that Johnson was in direct contempt of court.

## Recusal

Johnson argues that Judge Buchele should have *sua sponte* recused himself from hearing the contempt proceeding because of the judge's involvement in the facts. Johnson contends that Judge Buchele became so personally embroiled in the controversy that he could not grant a fair hearing. We disagree.

We said in *State v. Pondexter*, 225 Kan. 425, 433-34, 590 P.2d 1074 (1979):

"When the conduct of the contemner consists of personal vilification or an attack upon the integrity of the presiding judge, the judge should recuse himself and another judge should be called to hear and determine the charges. However, a judge is not always disqualified from hearing a direct criminal contempt, the basis for which arose while he was previously presiding in court. When the words or conduct of the contemner are not such as to constitute an insult to the judge personally or attack his judicial integrity, it may be proper for that judge to give notice, afford full opportunity for a hearing, and conduct a judicial hearing dispassionately and with fitting decorum. When this has been accomplished the contemner's due process rights have been adequately protected regardless of which judge presided at the contempt hearing."

While the exchange between Judge Buchele and Johnson maintained a sharp tone, Johnson made no personal attacks against the judge or his integrity. Johnson expressed dismay at the current procedure for scheduling preliminary hearings. According to Johnson, the scheduling procedure often resulted in late starts because other cases involving waivers or pleas were taken up first. Johnson saw himself as being singled out. According to Johnson, other attorneys were also late without any repercussions. Based on the *Pondexter* criteria, nothing said during that exchange required a *sua sponte* recusal by Judge Buchele.

## Attorney Fees

The sanction included $200 for 2 hours of waiting by both the assistant county attorney and the public defender.

Johnson reasons that the sanction is an unauthorized order to pay attorney fees. He points to the American Rule (attorney fees are not recoverable absent statutory authority) followed in Kansas. See Leslie, *Recovery of Attorney Fees—An Historical Perspective*, 53 J.K.B.A. 154 (1984).

The State contends that the district court has the authority to assess attorney fees under the "bad faith" exception to the American Rule. Johnson counters that the bad faith exception only applies to federal courts. The State reasons that the bad faith exception also applies to state courts, but he does not cite any supporting Kansas authority. The State relies on *Barten v. Turkey Creek Watershed Joint District No. 32*, 200 Kan. 489, 438 P.2d 732 (1968). However, *Barten* involved an award of attorney fees authorized by K.S.A. 60-802(c) as damages in a mandamus proceeding. The other Kansas cases cited by the State also involved mandamus actions.

We have held that, in the context of a violation of a restraining order or injunction, the court's authority to punish for contempt encompasses attorney fees. See, *e.g.*, *Edmiston*, 242 Kan. 13; *UARCO, Inc. v. Osborne*, 224 Kan. 163, 578 P.2d 266 (1978); and *State, ex rel., v. Bissing*, 210 Kan. 389, 502 P.2d 630 (1972). In *Bissing*, we cited what is now K.S.A. 22-3904(4), which provides for the inclusion of attorney fees in judgments entered in statutory nuisance abatement proceedings. We held that 22-3904(4) also applied to the contempt proceeding.

Here, the situation is atypical; the aggrieved party did not request an award of attorney fees. The district court assessed the fees *sua sponte* as part of the punishment. We hold the power to impose attorney fees in the sanction for direct contempt is included under the district court's general punishment powers as described in K.S.A. 20-1203 ("a direct contempt may be punished summarily"). However, the contemner must be informed that any sanction may include attorney fees. Our conclusion is predicated on the idea that Johnson is entitled to fair warning. Judge Buchele did not inform

Johnson at the time Johnson demanded the hearing instanter that attorney fees could be part of the fine.

## Abuse of Discretion

The record does not show that Johnson had been previously warned or sanctioned for similar conduct. However, Johnson's conduct supports a fine. The size of the fine was related to the contemptuous conduct (based on the hourly rate of the persons inconvenienced by Johnson).

We sever the $200 for attorney fees from the sanction, in view of Johnson's lack of notice that the fine could include attorney fees. We find no abuse of discretion and affirm the district court in all other respects.

Affirmed as modified.